In re Trust of Stuckey: Jacob, Appellant, *v.*
Richmond, Trustee, et al., Appellees.

(No. 159—Decided April 28, 1947.)

*Mr. Alex S. Dombey,* for appellant.
*Mr. Frank J. Murray* and *Mr. Deane M. Richmond,*
for appellees.

Montgomery, J.   Richard C. Stuckey, Sr., a resident
of the state of Illinois, executed his last will and testament on the 28th day of October 1904.   We are concerned only with one portion of item 5 of that will
and with item 7 thereof.

Item 5 recites, in part:

"I further will and devise to said Eugene H. Stuckey
in trust for the use of my said grandchildren during
their minority or until they each arrive at the age of
eighteen years, the entire Timmons farm that I own

in Jefferson township, Madison county, state of Ohio, being about three hundred eighty-seven (387); also farm being fully described in deed from Henry Alder to me dated April 15th, 1871, recorded April 18th, 1871 in volume 35 of deeds, page 33, of Madison county, Ohio.

"The share of each of my said three grandchildren, Edna, Jessie and Ethel, as above bequeathed, in the Timmons farm, upon such legatee obtaining the age of eighteen years, shall then go to the benefit and use of my own son Dick or Richard Stuckey, Jr., during his natural life. Upon the death of my son Dick or Richard Stuckey, Jr., and the attaining of the age of eighteen years by my said grandchildren, Edna, Jessie and Ethel, the said farm shall be equally divided among the children of all my sons. In case my son Richard Stuckey, Jr., dies prior to the time my granddaughter Ethel Stuckey shall have reached the age of eighteen years the said Timmons farm shall then vest in fee in the survivor or surviving child or children of said Richard Stuckey, Jr., or their issue if they have any, it being my express desire that no part of my estate shall go to my daughter-in-law Gertrude Stuckey by inheritance of said children or otherwise."

Item 7 is in the following language:

"I will, order and direct that said Eugene H. Stuckey, trustee, shall permit either of my legatees, being of lawful age, to use, manage and control the property hereby devised to such heir during the period named in the trust so long as he or she shall keep the same in repair and pay all taxes and assessments thereon, and in case any legatee fails to keep said property in repair or commits waste thereon, said Eugene H. Stuckey shall take possession of the same and out of the proceeds thereof make all needed repairs, until

such legatee shall satisfy the said trustee that he will keep said property repaired or shall not commit waste, by bond or otherwise, the trustee taking such property from such legatee, shall hold and control the same for the use of the legatee. These last provisions do not refer or pertain to any but life estates.''

Richard C. Stuckey, Sr., died in the year 1910. Jessie and Ethel Stuckey each died before reaching the age of 18 years. Edna Stuckey died at the age of 33 years, leaving three sons surviving her. Richard C. Stuckey, Jr., is still living at the age of 75 years, and, except for what he might receive under and by virtue of the provisions of this will and the orders of the court made pursuant thereto, would be without any resources whatever and, in fact, indigent. He came to Ohio in 1908, lived on this farm until after his father's death, then removed therefrom, returned to the farm for the years 1928 and 1929, again left it, and, except for the periods when he was upon the farm, has lived in Columbus, Ohio.

Eugene H. Stuckey qualified and served as trustee under this will until his death. Since that death there have been four successive trustees. With only the latter two of these are we concerned. One Stephen Mavis was appointed trustee about the year 1933 and served until 1941. At that time, Mavis' resignation being accepted, Deane M. Richmond was appointed, and he qualified, as trustee and is still serving as such.

In the year 1937, a deed was procured from Richard C. Stuckey, Jr., for his interest in this land, the grantees therein being nephews and nieces of his and the surviving children of a deceased brother, living in the state of Illinois. Richard C. Stuckey, Jr., was induced to execute this deed and, further, to make an

assignment of any interest he might have in this trust in consideration of the payment to him of $500, but the record shows that this $500 was not paid by the grantees, but was paid by the then trustee, Mavis, out of the income from this farm then in his possession.

Richmond, sometime after his appointment, brought suit, as trustee, in the Court of Common Pleas of Madison county, Ohio, to set aside this deed on the ground of fraud, alleging that the said Richard C. Stuckey, Jr., lacked the capacity to intelligently inquire into and understand his affairs; that he was in dire need of money and in bad physical condition; that he executed these instruments upon the representation of the agents and attorneys for the grantees that there was no money in the fund, and that, unless he did this, he would never receive a cent from the farm; and that all these representations were in fact false, because under this will Richard C. Stuckey, Jr., was a beneficiary, was entitled to receive the net income and had no title to the trust property, and there was at that time in the hands of the trustee more than $500 which should have been payable to such beneficiary.

That case was tried in the Court of Common Pleas of Madison county, but was not decided, as counsel stated, because of the ill health of the then common pleas judge, who, subsequently thereto, died.

On September 16, 1946, these seven nephews and nieces, residents of Illinois, claiming to be the owners of the life estate of Richard Stuckey, Jr., and also the owners of the estate in remainder, made application to the Probate Court for an order terminating the trust, on the ground that the estates had merged; that Richard Stuckey, Jr., had parted with his interest; that waste had been committed upon the land; and that,

by the provisions of the will of the testator, the trust had ceased. The application also sought the removal of Richmond as trustee on the ground that he was representing conflicting interests and was not acting impartially in the administration of the trust.

Thereafter, as shown by the record, these seven persons executed and delivered a deed for their entire interest in this property to the appellant, John G. Jacob, who was substituted as applicant. The record shows that he is a real estate broker in the city of Columbus and is a business associate and a brother-in-law of his counsel in this action who is the same counsel who procured the deed and assignment from Richard C. Stuckey, Jr., and represented the grantees in that deed, in filing the original application in the Probate Court. The record shows further that the appellant procured the interests of these alleged remaindermen at what he, at least, considered a great bargain, because he paid less than 50 per cent of the amount at which he later offered this farm for sale. After the hearing of some of the evidence in the Probate Court, and while the case was still pending therein, the action in the Court of Common Pleas was dismissed, and the trustee filed in the Probate Court in this action an answer in which he sought the setting aside of this deed, alleging substantially the same grounds as in the action in the Common Pleas Court, and assigning as a reason for the filing of the answer the necessity of a determination of the validity of the deed in order properly to administer the trust.

The Probate Court made a finding and held against the appellant on all grounds alleged in the original application by his grantors. From that judgment an appeal was perfected to this court, and the cause was submitted upon the pleadings in the Probate Court, a

transcript of the evidence taken therein, and a transcript of all the evidence taken in the Common Pleas Court, which was submitted in the lower court as an exhibit. The questions raised in this court are essentially factual. No difficult legal propositions are involved, and there is no need of a discussion of applicable authorities. There are seven assignments of error, to wit:

First, that the Probate Court had no jurisdiction to grant such relief to the trustee; second, that there was error in setting aside the deed; third, that there was error in continuing the trust; fourth, that there was error in ordering a continuation of the payments of $100 per month to Richard C. Stuckey, Jr. (in passing, it should be observed that there was a suspension of these payments for a period of years, but that even after the execution of these documents by Richard C. Stuckey, Jr., with the approval of the attorney for the appellant, the payments were renewed); fifth, that there was error in refusing to remove Richmond as trustee; sixth, in holding that there was no waste committed upon the land; and, seventh, a general charge of bias and prejudice on the part of the trial court and of bad faith on the part of the trustee.

We discuss these several assignments of error briefly.

Section 10501-53, General Code, describes jurisdiction of the Probate Court, specifying thirteen separate situations in which such jurisdiction is granted. The section concludes with the following statement:

"The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute."

Of course the Probate Court had full power to order

the carrying out of the provisions of this will so far as they affected the property in Madison county. One of the provisions was the maintenance of this trust. In order to carry out the requirements of the trust, if Richard C. Stuckey, Jr., is still a beneficiary thereunder, except for this conveyance, it was essential that the validity of the conveyance be determined when it was questioned. We hold that the Probate Court was vested with power to hear and determine the question of the validity of this deed and the assignment of funds.

The court's holding that the conveyance and the assignment were invalid because of fraud being perpetrated is not contrary to the weight of the evidence. There was ample and credible evidence to justify such finding. It is intimated by appellant, in passing, that even if the trustee were otherwise entitled to such relief, he is barred by the statute of limitations. It is a sufficient answer to this claim to point out that the statute of limitations was not pleaded as a defense, and that, to be available, it must be pleaded.

As to the order of the court continuing the trust, it seems to us that there can be no question about the propriety of this finding. Item 5 of this will, hereinbefore quoted specifically provides that upon the last named legatee reaching the age of 18 years, the share of each of them "shall then go to the benefit and use of my son Dick or Richard Stuckey, Jr., during his natural life."

As stated, the granddaughters are dead. Had they survived they would all long ago have passed the age of 18 years, and their interest as beneficiaries under the trust would have ceased. Such interest did cease, and Richard C. Stuckey, Jr., became, and is, the sole beneficiary.

And, following this conclusion, the fourth assign-

ment of error has no merit, because, with the funds admittedly in the hands of the trustee, the payments to the beneficiary should be continued, as the lower court directed.

We fail to find, from a reading of the record, anything which would justify the removal of Richmond as trustee. We find no evidence of any dereliction of duty. We certainly do not find that he is representing conflicting interests. He admits having been retained by one of the grandchildren of Richard C. Stuckey, Jr., to look after such grandchild's interests, when, and if, they should mature. The trustee stated upon the witness stand, and from the will his statement is obviously correct, that these grandchildren can have no interest so long as Richard C. Stuckey, Jr., lives, or so long as this trust is in effect. There could be nothing inconsistent with the management of the trust during the lifetime of Richard C. Stuckey, Jr., and the representing of a possible heir after termination of the trust.

The sixth assignment of error, upon which great stress is laid, is that waste had been committed, and that, by reason of item 7 of the will, the trust should have been terminated and Richard C. Stuckey, Jr., deprived of any interest thereunder. As hereinbefore observed, he is not a life tenant, he is a beneficiary under a trust, the legal title being vested in the trustee. There is no evidence that Stuckey, himself, committed waste, and the only evidence is that during the two years that he actually was upon the farm he improved it and left it in better condition in every way than he found it.

Nor are we able to conclude that the trustee has permitted any waste. It is true that the fences, the buildings and the tiling are in bad shape, that there

has not been much rotation of crops, that there has been no livestock upon the place, and that it has simply been farmed for what it would produce, with, however, a good deal of fertilizing being done to the farm and some fences built.

Perhaps the following personal reference will be excused. The writer of this opinion has for years operated two farms. One of 256 acres he has operated in his own right. It is highly cultivated, with buildings and fences in good shape, with an adequate amount of livestock upon the land, and with sufficient equipment to do what is for the best interest of the land. This farm has always returned a very substantial profit. The other farm of 199 acres he has operated as guardian of a couple of minors. That farm was run down, the fences and buildings in bad shape, no livestock upon the ground, no equipment upon the ground, and no money with which to purchase any of these things. The only alternative was to rent, so as to produce as much as possible. Paying taxes, making the most needed improvements, and finding something for the necessities of his wards were not an easy matter. Naturally, however, he would not construe this situation as constituting waste of the land. And in the instant case it seems that a parallel is afforded by Richmond's situation.

Coming, finally, to the alleged bias and prejudice, misconduct and double-dealing, suffice it to say we find none of these. The probate judge was pronounced in his views, and, true, he had knowledge of the things which had preceded the trial in that court, and he may have applied his knowledge of these pre-existing events. No objection was made to his sitting in the case, and, in the absence of a finding that he committed error in any other respect, it would be difficult to

charge him with any bias or prejudice. We cannot, as hereinbefore indicated, find any evidence of bad faith or double-dealing on the part of the trustee.

The judgment of the Probate Court is affirmed.

*Judgment affirmed.*

WISEMAN, P. J., and NICHOLS, J., concur.

(Decided May 9, 1947.)

ON MOTION for certification.

BY THE COURT. The motion to certify the record of this case to the Supreme Court on the ground that the judgment of this court is in conflict with the judgment in the case of *Sherrets, Admx., v. Tuscarawas Savings & Loan Co.,* 78 Ohio App., 307, 70 N. E. (2d), 127, is overruled. The instant case, as it came before us, was on appeal from the judgment of the Probate Court in a proceeding properly instituted therein under subdivisions 3 and 4 of Section 10501-53, General Code.

The concluding paragraph of that section is:

"The Probate Court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute."

As stated in our former opinion, the matter properly before the Probate Court could not have been disposed of without passing upon the validity of the deed in question. There is no limitation or denial by statute of the power exercised.

Referring to the *Sherrets case,* we direct attention to the statement of facts appearing in the opinion, on page 313, to wit:

"It must be remembered that the entire transaction

of which plaintiff complains occurred prior to the death of her decedent. It is not a case of someone withholding an asset of the estate under a claim of gift or ownership from an estate's personal representative; but a fully executed transaction whereby decedent parted with title and possession in her lifetime. All the administratrix of her estate had was a right of action to recover property or its money value. It is exactly in the same situation as a promissory note due the estate, or an action for personal injury to the decedent's person or property, or property withheld which could only be recovered by an action in replevin."

And the court, in the *Sherrets case,* on page 312, cited Borchard on Declaratory Judgments. Borchard's statement, the generally adopted doctrine relative to declaratory judgments, is that the Declaratory Judgments Act is only a new procedural device or vehicle of relief and is not an expansion of jurisdiction.

*Motion overruled.*

WISEMAN, P. J., NICHOLS and MONTGOMERY, JJ., concur.

NICHOLS, J., of the Seventh Appellate District, and MONTGOMERY, J., of the Fifth Appellate District, sitting by designation in the Second Appellate District.