**Jacob ROUNDHOUSE and Jay Roundhouse, d/b/a Roundhouse Trout Ranch and Robinett Trout Pond, Plaintiffs-Appellees-Cross Appellants,**

v.

**OWENS–ILLINOIS, INC., Defendant-Appellant-Cross Appellee.**

Nos. 77–1228, 77–1229.

United States Court of Appeals, Sixth Circuit.

Argued April 6, 1979.

Decided Aug. 16, 1979.

Eugene F. Townsend, Jr., Fraser, Trebilcock, Davis & Foster, John J. Loose, Lans-

ing, Mich., for defendant-appellant-cross-appellee.

Joseph J. Jerkins, Jerkins, Plaszczak & Hurley, James F. Bauhof, Kalamazoo, Mich., for plaintiffs-appellees-cross-appellants.

Before EDWARDS, Chief Judge, KEITH, Circuit Judge, and BROWN, District Judge.*

KEITH, Circuit Judge.

This case involves a dispute between the former operators of a "ma and pa fish-ranch" and a corporation which allegedly sold them diseased fish. The plaintiffs and the defendant both raised trout for resale. In June of 1967, the parties agreed to a "fish exchange" whereby the plaintiff bought fish from the defendant and vice-versa. The plaintiff received fish from the defendant on June 26, 1967, July 6, 1967, August 11, 1967, and October 5, 1967.

During 1968 both sides noticed that the fish in their respective facilities were acting abnormally. After testing took place, it was determined that the fish in both facilities were infected with *Myxosoma Cerabralis*, also known as "whirling disease." Both parties lost out as a result. The state of Michigan forced the plaintiffs to destroy all of their fish; the defendant suffered similar, though lesser losses. The result of what the district court correctly characterized as "these tragic misfortunes" was the instant litigation where each side blamed the other for the outbreak of the "whirling

disease." The jury settled the hotly disputed issue of liability by finding that the defendant was responsible for the tragedy. The validity of this finding is not questioned here, but both sides have appealed on separate grounds. The defendant complains that the plaintiffs' cause of action was barred by the statute of limitations. The plaintiffs complain that they were entitled to more money and that the district judge erred in refusing to let the jury consider questions of loss of business reputation and goodwill. We think that Judge Miles correctly handled these unsettled questions of state law and affirm the judgment in all respects save one regarding damages and the collateral source rule.

## I

### The Statute of Limitations Question

The basis for defendant's claim that the statute of limitations bars plaintiffs' cause of action is that the Uniform Commercial Code prescribes a 4-year statute of limitations which begins to run at delivery.[1] The fish in this case were delivered in June, July, August, and October of 1967; the complaint was filed on September 30, 1971. Application of the U.C.C.'s four year statute of limitation bars claims based on three out of the four fish deliveries. Defendants conclude their argument by saying that it would be speculative for the jury to find that the fish were infected on the one non-barred delivery as opposed to the three time-barred deliveries.

---

* The Honorable Bailey Brown, Chief Judge, U. S. District Court for the Western District of Tennessee, sitting by designation.

1. U.C.C. § 2–725 provides:

  (1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than 1 year but may not extend it.

  (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the

breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

  (3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within 6 months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

  (4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this act becomes effective.

Plaintiffs make a number of arguments in reply. Their strongest argument is that *another* Michigan statute should be applied to modify the Uniform Commercial Code here. U.C.C. § 2–725 provides that ordinarily a limitations period for a breach of warranty action starts running at the time of delivery of the goods.[2] However an old and unrepealed Michigan statute provides that the limitations period for a breach of warranty action starts running at the time breach is discovered or should have been discovered.[3] Reconciling these conflicting state statutes is a task to which we are ill-suited.[4] The Michigan State courts have provided no definitive guidance, although *dicta* in one opinion[5] favors the defendant.

Fortunately, we do not have to grapple with this issue. We conclude that the jury's verdict must be sustained even if operation of the statute of limitations barred any claim based on the first three deliveries. The expert testimony at trial was to the effect that there was no way to determine which delivery of fish caused the "whirling disease." It could have been any one of the three deliveries or a combination thereof. The defendant argues that since it is equally plausible that the whirling disease resulted from a time-barred delivery as from a non-time-barred delivery, that the jury must not be allowed to speculate as to which caused the "whirling disease." Primary reliance is placed upon *Kaminski v. Grand Trunk R. Co.*, 347 Mich. 417, 421, 79 N.W.2d 899, 901 (1956), where the court indicated that when a trial judge addresses a motion for directed verdict, he must examine whether there exists a "conjectural choice between equally plausible inferences." If, viewing the inferences in favor of the plaintiff, the cause of the injury urged by him is "equiponderant," then a directed verdict is in order. *See also Parsonson v. Construction Equipment Co.*, 386 Mich. 61, 191 N.W.2d 465 (1971) (plaintiff's theory that gasoline explosion was caused by a defective heater-blower was only "conjecture"); *Daigneau v. Young*, 349 Mich. 632,

---

**2.** *See* U.C.C. § 2–725(2). That section also provides that a cause of action accrued at the *discovery* of a breach in cases where "a warranty explicitly extends to future performance." As an alternative argument, plaintiffs argue that this is such a case. Although we do not reach this argument, we have recently noted that judicial construction of this "explicitly" extending to future performance clause has been very narrow. *See Standard Alliance Industries Inc. v. The Black Clawson Co.*, 587 F.2d 813, 818–21 (6th Cir. 1978), *cert. denied*, —— U.S. ——, 99 S.Ct. 2032, 60 L.Ed.2d 396 (1979).

**3.** M.C.L.A. § 600.5833, M.S.A. § 27A.5833 provides:

In actions for damages based on breach of a warranty of quality or fitness the claim accrues at the time the breach of the warranty is discovered or reasonably should be discovered. P.A.1961, No. 236, § 5833, Eff. Jan. 1, 1963.

**4.** For an example of a valiant attempt to divine Michigan law in this area *see Reid v. Volkswagen of America, Inc.*, 512 F.2d 1294 (6th Cir. 1975).

**5.** In *Parish v. B. F. Goodrich Co.*, 395 Mich. 271, 278–79, 235 N.W.2d 570, 573 (1975), the court stated:

The provisions of UCC § 2–725 (a warranty is breached upon tender of delivery), while entirely satisfactory in a commercial setting,

are inconsistent with principles developed by the courts in consumer actions against manufacturers for personal injury. While most business losses attributable to a defective product will surface during the 4-year period prescribed by § 2–725, consumers often suffer personal injury after a longer period of time has elapsed. Adopting time of delivery, without regard to time of discovery, as the point of departure for statute of limitations purposes frequently will produce unsatisfactory results in personal injury cases.

Section 2–725 concerns, if not only, primarily claims based on an *agreement* of the parties to the litigation—including actions based on warranties implied from or in respect of their agreement.

On the other hand, a Michigan Court of Appeals has held that M.C.L.A. § 600.5833, reprinted *supra* at n. 3, operated to toll the Indiana U.C.C. § 2–725's limitations period until the date of discovery of the breach. *See Waldron v. Armstrong Rubber Co.*, 64 Mich.App. 626, 236 N.W.2d 722 (1975). Although the above-quoted passage from *Parish* is difficult to reconcile with *Waldron*, the Michigan Supreme Court denied leave to appeal in the latter case, 399 Mich. 895 (1975). *See also Morton v. Texas Welding & Mfg. Co.*, 408 F.Supp. 7 (S.D.Tex. 1976) (applying analogous provisions of Texas law).

634–36, 85 N.W.2d 88, 90 (1957) (proof of negligence could not be "supplied by a guess of the jury"); *Barry v. Elkin*, 332 Mich. 427, 431, 52 N.W.2d 171, 173 (1952); ("Where a death or injury may be due to one of several causes and the proofs do not establish the active cause, damages will not lie.") *Frye v. City of Detroit*, 256 Mich. 466, 469–70; 239 N.W. 886, 887 (1932); ("The proof must establish causal connection beyond the point of conjecture") [6]

We think that the above-cited authorities are distinguishable. They stand for the proposition that a plaintiff must prove via direct evidence or reasonable inference that a liability—conferring cause resulted in injury to him. A jury cannot speculate as to liability, the evidence must be such that a liability—creating cause is more likely than non-liability—creating ones. In this case, however, the only cause which would subject the defendant to liability was the sale of diseased fish. It is true that this cause could have resulted on any one of four separate occasions, but that cannot obscure the fact that there was only *one* cause for the outbreak of the "whirling disease" and that was the sale of diseased fish.

We think that the district court was correct in ruling that under these circumstances, the defendant had the burden of proving that the bar of the limitations period would preclude liability. *See Alston v. Bitely*, 252 Ark. 79, 477 S.W.2d 446, 458 (1972); *Furrer v. Talent Irrigation District*, 258 Or. 494, 466 P.2d 605 (1970); *Sanders v. Merchant State Bank*, 349 Ill. 547, 182 N.E. 897 (1932); *Hood v. Commonwealth Trust & Savings Bank*, 376 Ill. 412, 34 N.E.2d 414, 419 (1941); *Golden v. Lerch Bros.*, 203 Minn. 211, 281 N.W. 249, 253–54 (Minn.1938); *Buck v.*

*Newbury*, 55 W.Va. 681, 47 S.E. 889, 890 (1904); 51 Am.Jur.2d Limitations of Actions § 484; 54 C.J.S. Limitations of Actions § 386.

This view is in accord with Michigan law that the statute of limitations is an affirmative defense which must be pleaded and proved by the defendant. *Locke v. Detroit*, 335 Mich. 29, 55 N.W.2d 161 (1952); *Tumey v. Detroit*, 316 Mich. 400, 25 N.W.2d 571 (1947); *Szlinis v. Moulded Fiberglass Co.*, 51 Mich.App. 620, 215 N.W.2d 777 (1974); *Bratton v. Trojan Boat Co.*, 19 Mich.App. 236, 172 N.W.2d 457 (1969), *aff'd* 385 Mich. 585, 189 N.W.2d 206 (1971).[7]

This is also in accord with Michigan's view that statutes of limitation are based on a fairness rationale of protecting defendants against stale claims. *See Bigelow v. Walraven*, 392 Mich. 566, 221 N.W.2d 328 (1974); *Buscaino v. Rhodes*, 385 Mich. 474, 189 N.W.2d 202 (1971); *Pesola v. Inland Tool & Mfg. Inc.*, 423 F.Supp. 30 (E.D.Mich. 1976).[8] No claim of unfairness to defendant can be made here. On the contrary, to accept defendant's argument is to formalistically deny plaintiff recovery on a valid jury verdict.

We think that the situation here is analogous to that of a case of joint and several liability. Where it is impossible to determine which one of several tortfeasors was responsible for an injury, a plaintiff can join them all in one action and let them fight out liability among themselves. *See Watts v. Smith*, 375 Mich. 120, 134 N.W.2d 194 (1966); *Maddux v. Donaldson*, 362 Mich. 425, 108 N.W.2d 33 (1961); *Schindler v. Standard Oil Co.*, 166 Ohio St. 391, 143 N.E.2d 133 (1957); *Maryland Cas. Co. v.*

---

**6.** Ohio law is to the same effect. *See Westinghouse Electric Corp. v. Dolly Madison L & F Corp.*, 42 Ohio St.2d 122, 326 N.E.2d 651, 656 (1975); *Krupar v. Proctor & Gamble Co.*, 160 Ohio St. 489, 117 N.E.2d 7, 10 (1954); *Gedra v. Dallmer Co.*, 153 Ohio St. 258, 91 N.E.2d 256, 260–61 (1952).

Although it is unclear, the district court apparently took the position that Michigan law would control the statute of limitations questions and Ohio law would control the remaining substantive issues. Neither side has raised any conflicts of law questions on appeal. In any

event, there appears to be no conflict between Ohio and Michigan law on any of the issues presented.

**7.** Ohio law is the same. *In Re Stuckey*, 80 Ohio App. 421, 73 N.E.2d 208 (1947); *Schindler v. Schindler*, 50 Ohio App. 517, 198 N.E. 879 (1935).

**8.** Ohio law is the same. *See Summers v. Connolly*, 159 Ohio St. 396, 112 N.E.2d 391, 392 (1953).

*Frederick Co.*, 142 Ohio St. 605, 53 N.E.2d 795 (1944); *Cuddy v. Horn*, 46 Mich. 596, 109 N.W. 32 (1881). The theoretical basis for joint and several liability is the same as that for vicarious liability generally—it is fair under some circumstances to enhance the recovery possibilities of an injured victim even at the risk of making a possibly innocent party pay the cost. *See generally Hall v. DuPont*, 345 F.Supp. 353, 370–380 (E.D.N.Y.1972). Here, the policy considerations are at least as strong since there is only one wrongdoer.

In this case, we have a single wrongdoer which caused injury on at least one of four occasions (deliveries). It should be incumbent on the wrongdoer to prove that the injury it caused did not result from the one non-time-barred delivery. The defendant would have us place the burden of proof on the innocent plaintiff. This we decline to do. Since the defendant did not meet its burden or even begin to do so, the jury's verdict must stand.[9]

## II

### The Damages Issues

#### A. The Collateral Source Problem

■ Upon discovery of the whirling disease, the state of Michigan ordered that the plaintiffs destroy all of their trout. The plaintiffs opposed this drastic measure in state court, but to no avail. Subsequently, they applied to the state for compensation for the destruction of the fish. The state of Michigan was eventually successful in securing funds from the federal government and turned over $51,000 of this money to the plaintiffs as partial compensation for the destruction of their fish. The district court examined the collateral source doctrine and concluded that this payment did

not come within that doctrine. To avoid what it viewed as a "double recovery," the court ordered that the final judgment of money damages be reduced by $51,000. Plaintiffs appeal.

This issue presents a novel legal question. The collateral source doctrine is that money received from an independent source will not diminish recovery from a wrongdoer. The doctrine normally applies to such items as insurance payments, disability benefits and wage-continuation payments by an employer. *See Great Lakes Trans. Co. v. Graycon Constr. Inc.*, 506 F.2d 498, 504 (6th Cir. 1974) *cert. denied*, 420 U.S. 947, 95 S.Ct. 1330, 43 L.Ed.2d 426 (1975); *Pryor v. Webber*, 23 Ohio St.2d 104, 263 N.E.2d 235 (1970); *Squires v. Kalamazoo Road Comm.*, 378 Mich. 613, 147 N.W.2d 65 (1967); 22 Am.Jur.2d Damages § 206.

The district court found that the recovery here fell outside of the collateral source rule for two reasons. First, because the payments were entirely voluntary and gratuitous. Second, because the state was intimately involved in the destruction of the fish. Although the issue is novel, we think that these distinctions do not suffice and that the collateral source rule should apply.

The fact that payments are voluntary and gratuitous does not justify barring the doctrine. *See Pryor v. Webber, supra*, 23 Ohio St.2d 104, 263 N.E.2d at 240; *Klein v. Thompson*, 19 Ohio St. 569 (1869). What matters is whether the source of the funds is independent of (collateral to) the wrongdoer. The district court reasoned that the state of Michigan was so involved in the destruction of the fish that it could not be viewed as playing a "collateral" role. Although this view is plausible, we think it crucial that the state was not a party to this action, nor aligned with a party to this

9. The defendant did request that the jury be instructed that it could only find liability if the "whirling disease" resulted from the final delivery of fish in October and no other delivery. This requested instruction was properly denied. At no point did defendant indicate a desire to show that the "whirling disease" resulted from the earlier three deliveries and not the final delivery.

Under these circumstances, it was not error for the district court to let the jury consider all of the deliveries of fish, even if the cause of action accrued at the time of delivery. Similarly, the district court's instruction to the jury that the cause of action accrued at the time the defect was discovered, if error, was harmless.

action. In fact, the defendant argued at trial that Michigan's action in ordering the fish destroyed was an unforseen intervening cause for plaintiffs' losses. In sum, we think that the rationale of the collateral source rule is fully applicable here—a wrongdoer cannot benefit from payments to the victim by a third party.

**B. Lost Goodwill & Business Reputation**

■ The district court instructed the jury that they could not consider the question of loss of business reputation and goodwill in relation to the plaintiffs' damages. Plaintiffs claim that this was error. The controlling statutes here are U.C.C. § 2–714 and § 2–715 which allow incidental and consequential damages.

Goodwill and loss of business reputation might be deemed consequential damages. Most courts which have confronted similar arguments have denied such damage claims as too speculative. *See Agr. Services Ass'n, Inc. v. Ferry-Morse Seed Co.*, 551 F.2d 1057, 1070–72 (6th Cir. 1977); *Chrysler Corp. v. E. Shavitz & Sons*, 536 F.2d 743 (7th Cir. 1976); *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970); *Harry Rubin & Sons v. Consolidated Pipe Co.*, 396 Pa. 506, 153 A.2d 472 (1959); *Allied Chemical Corp. v. Eubanks Industries, Inc.*, 155 So.2d 740 (Fla.App. 1963). *But see Westric Battery Co. v. Standard Electric Co., Inc.*, 522 F.2d 986 (10th Cir. 1975); *Texsun Feed Yards, Inc. v. Ralston Purina Co.*, 447 F.2d 660 (5th Cir. 1971).

There are no Ohio cases on point, although Ohio recognizes the possibility of recovery of goodwill in the valuation of a partnership, *Snyder Mfg. Co. v. Snyder*, 54 Ohio St. 86, 43 N.E. 325 (1896); *Brass & Iron Works Co. v. Payne*, 50 Ohio St. 115, 33 N.E. 88 (1893), in a negligence action, *Canton Provision Co. v. Gauder*, 130 Ohio St. 43, 196 N.E. 634 (1935), and in a case where the parties expressly provide for such a loss in their contract. *Jones v. Stevens*, 112 Ohio St. 43, 146 N.E. 894 (1925).

We will assume that in some cases, the Ohio courts would allow a jury to consider lost goodwill in a breach of warranty action. We agree with the district judge that this is not such a case. Goodwill/Business reputation is that aspect of a business which helps it generate profits—usually it is a reputation for good service which helps attract a client base. *See Agr. Services Ass'n, Inc. v. Ferry Morse Seed Co., supra*, 551 F.2d at 1071 (6th Cir. 1977). In this case, however, the plaintiffs were unable to show that they lost any profits whatsoever. Nor did plaintiffs offer any expert testimony valuing goodwill as did the plaintiffs in *Westric Battery Co. v. Standard Electric Co., Inc., supra*. The sole evidence advanced was testimony that plaintiff's customers became afraid to buy fish from them because of the outbreak of the disease and that plaintiff's customer base fell drastically as a result. Since the plaintiffs could not prove the profitability of their business, or assign any kind of a goodwill value to it, it would have been sheer speculation on the jury's part to try to establish a figure for lost goodwill. *See Agr. Services Ass'n, Inc. v. Ferry-Morse Seed Co., supra*, 551 F.2d at 1070–72 (6th Cir. 1977); *Taylor v. B. Heller & Co.*, 364 F.2d 608 (6th Cir. 1966). The district court was unquestionably correct in directing a verdict on this issue.

**III**

In conclusion, we affirm the judgment of liability since we find no statute of limitations bar. We modify the judgment by $51,000 to a total sum of $272,184.94. As modified, the judgment is affirmed.