846 So.2d 734 (2003)
LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
KANSAS CITY SOUTHERN RAILWAY CO., et al.
No. 2002-C-2349.
Supreme Court of Louisiana.
May 20, 2003.
*735 Richard P. Ieyoub, Attorney General, James M. Bookter, Lawrence A. Durant, Baton Rouge, Lawrence E. Marino, William *736 M. Hudson, III, Lafayette, Counsel for Applicant.
Bobby S. Gilliam, Wilkinson, Carmody & Gilliam, Shreveport; Albert M. Hand, Jr., Cook, Yancey, King & Galloway, Shreveport; Osborne J. Dykes, III, John S. Stephens, Counsel for Respondent.
CALOGERO, Chief Justice.
Louisiana Department of Transportation and Development ("DOTD") expended several million dollars to remove environmental pollution at a construction site for Interstate 49 in Shreveport, Louisiana. The United States government, through the Federal Highway Administration ("FHWA"), thereafter reimbursed DOTD ninety percent of the remediation costs. DOTD sued, among other defendants, Kansas City Southern Railway Co. ("KCS") under the Louisiana Environmental Quality Act ("LEQA") to recover the clean-up costs, alleging that KCS polluted the site. The courts below held that DOTD's action was limited to the ten percent of clean-up costs it had actually incurred, and that DOTD could not recover the portion of the costs reimbursed to DOTD by the FHWA. We reverse the lower courts and conclude that DOTD may seek judgment against KCS for the full measure of damages caused by its pollution.
FACTS AND PROCEDURAL HISTORY
Each year, Congress appropriates billions of dollars to subsidize state highway construction projects, and the FHWA apportions these funds among the states. 23 U.S.C. §§ 104(b), 118. States become eligible for their allotted federal funds by obtaining FHWA approval for a project, signing a project agreement with the FHWA, paying the full cost of construction from state funds, and, finally, requesting reimbursement from the FHWA for the federal share of the cost, which is ninety percent on interstate projects. In completing these federally funded highway projects, states must closely adhere to FHWA standards and procedures.
On June 2, 1989, DOTD entered into a project agreement with FHWA to construct a segment of Interstate 49 in Shreveport. During construction, DOTD discovered environmental contamination at the site. FHWA apportioned a share of Louisiana's federal highway construction funds to remedy the polluted site preceding construction of the highway. In disbursing these funds, the parties followed the procedure applicable to highway construction. DOTD paid the full costs of clean-up from state funds, and was thereafter reimbursed by FHWA the ninety percent federal share. DOTD filed suit to recover the cost of eliminating the pollution, naming as defendants KCS, North Louisiana Goodwill Industries Rehabilitation, Inc., Steel Erectors, Inc., Crystal Gas Storage, Inc., and the insurance carriers for these entities. KCS is the only defendant remaining in this litigation.
In its petition, DOTD alleged that KCS's responsibility for the contamination arises out of a March 31, 1966 train derailment which occurred at or near the property in question. The contents of the derailed train cars were destroyed or disposed of at the scene of the accident. The train had allegedly been carrying hazardous materials, and the materials were buried at or near the site. DOTD brought its action under the LEQA, La.Rev.Stat. 30:2271, et seq., specifically citing La.Rev.Stat. 30:2276(G)(3), which provides that a party who has incurred remedial costs in responding to a discharge or disposal of a hazardous substance covered by the Act *737 may sue to recover such remedial costs.[1] In response to the allegation in the defendant Crystal's answer[2] that DOTD could not recover the portion of the clean-up costs reimbursed by FHWA, DOTD filed a Motion in Limine seeking to withhold from the jury evidence of FHWA's participation in DOTD's remediation.[3] In support of its Motion in Limine, DOTD argued that the collateral source rule prevented defendants from receiving a reduction in their liability simply because DOTD received funding for the remediation from an independent source. DOTD further stated that its relationship with FHWA was analogous to a partnership, giving DOTD authority to recover the full amount of damages on the partnership's behalf. DOTD pointed out that FHWA was paying, as well, ninety percent of the attorney's fees to pursue this action.
Crystal filed a Motion for Partial Summary Judgment, seeking dismissal of DOTD's claim as to the remediation costs paid from federal funds. Crystal argued that DOTD had no standing or other legal authority to recover on behalf of the FHWA the ninety percent of the damages reimbursed by FHWA. According to Crystal, allowing DOTD to seek the entire amount of incurred clean-up costs would constitute an impermissible double recovery by DOTD of the identical remediation costs. KCS joined Crystal's Motion for Partial Summary Judgment. In its Opposition, DOTD re-urged the applicability of *738 the collateral source rule. Alternatively, DOTD asserted that FHWA had specifically authorized DOTD to act on its behalf to recover the federal portion of the clean-up costs. DOTD relied on affidavits, as well as on four documents prepared by FHWA in an attempt to prove this agency relationship.[4]
The district court granted the defendants' Motion for Partial Summary Judgment. The court found that DOTD would receive a double recovery if it were allowed to recover the ninety percent federal share of the clean-up costs after having the same costs funded by the federal government. The trial court further found insufficient evidence to indicate that a partnership existed between DOTD and FHWA or that DOTD was specifically authorized by FHWA to recover the federal money expended. After the district court entered judgment, Crystal entered into a confidential settlement agreement with DOTD.
DOTD filed a Motion for New Trial, alleging that the federal share of any remediation costs recovered would belong to the FHWA, not DOTD. Thus, DOTD would not receive a windfall or double recovery. DOTD attached in support of its motion several affidavits which had not been previously considered by the district court.[5] The district court denied DOTD's Motion for New Trial, specifically finding that no genuine issues of material fact existed with regard to its earlier conclusion that DOTD could not recover remediation costs already reimbursed by FHWA, as this would constitute a prohibited double recovery. The district court found that, according to the pleadings, DOTD sued only in its own right, not in an agency capacity on behalf of FHWA. After the district court designated its judgment as final, DOTD appealed the grant of Crystal's Motion for Partial Summary Judgment.
The court of Appeal affirmed the district court's grant of partial summary judgment, finding that allowing DOTD to recover the entire amount of remediation costs incurred would constitute an impermissible double recovery. The court of appeal held that the collateral source rule was not applicable in this action under the LEQA. Furthermore, the court found that DOTD supplied no evidence containing any special authorization from FHWA enabling DOTD to sue on its behalf to recover the federal portion of the remediation costs. We granted certiorari to review the correctness of the court of appeal's decision.
LAW AND ANALYSIS
DOTD urges this court to reverse the court of appeal and find that it has standing to seek a judgment against KCS for the entire amount of expenses made necessary by the contamination at the construction site. DOTD primarily argues that, pursuant to authority granted by the FHWA, it is suing the alleged polluter on *739 FHWA's behalf; thus, it will not receive a double recovery. DOTD alternatively contends that the collateral source rule prevents KCS from obtaining a reduction in liability for the DOTD's removal costs, in large measure funded by FHWA.
As a preliminary matter, KCS filed a motion in this court to strike those affidavits relied upon by DOTD in its Motion for New Trial, which had not been previously entered into evidence at the summary judgment hearing. KCS urges that, pursuant to La.Code. Civ. Proc. art. 2164, an appellate court cannot consider evidence outside of the record on appeal, and DOTD did not appeal the denial of its Motion for New Trial. We note that DOTD's Motion for New Trial concerned only whether DOTD had authority to sue to recover cleanup costs on behalf of FHWA. It unnecessary for this court to address the issue of whether DOTD is suing in a representative capacity on behalf of FHWA in light of the resolution in this opinion favorable to DOTD on its alternate assignment of error regarding the collateral source rule.
Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. Warren v. Fidelity Mut. Ins. Co., 99 So.2d 382, 385 (La.App. 1st Cir.1957); Williamson v. St. Francis Med. Ctr., Inc., 559 So.2d 929, 934 (La.App. 2d Cir.1990); Griffin v. The Louisiana Sheriff's Auto Risk Assoc., 99-2944, p. 34 (La.App. 1st Cir.6/22/01), 802 So.2d 691, 713. Under this well-established doctrine, the payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer. Terrell v. Nanda, 33,242, p. 3 (La.App.2d Cir.5/10/00), 759 So.2d 1026, 1028.
The collateral source rule is of common law origin, Restatement (Second) of Torts § 920A (1979), yet well-established in the jurisprudence of this state, see Warren, 99 So.2d at 385; Doerle v. State, DOTD, 147 So.2d 776, 782 (La.App. 3d Cir.1962); Thomas v. Paper Haulers, 165 So.2d 61, 63 (La.App. 2d Cir.1964). And, it has not been altered statutorily. In fact, early Louisiana cases cite legal encyclopedias and other common law reference sources as the basis for application of the collateral source rule. See Warren, 99 So.2d at 385 (citing 25 C.J.S. Damages, § 99); see also Doerle, 147 So.2d at 782 (citing 25 C.J.S. Damages, § 99; 15 Am.Jur. Damages, § 201).
Several public policy concerns support the collateral source rule generally. The reason most often stated is that the defendant should not gain an advantage from outside benefits provided to the plaintiff independently of any act of the defendant. Bryant v. New Orleans Public Service, Inc., 406 So.2d 767, 768 (La.App. 4th Cir. 1981), affirmed, 414 So.2d 322 (La.1982). It is also clear that the collateral source rule promotes tort deterrence and accident prevention. Suhor v. Lagasse, 00-1628, p. 3 (La.App. 4 Cir. 9/13/00), 770 So.2d 422, 424. Moreover, absent the collateral source rule, victims would be dissuaded from purchasing insurance or pursuing other forms of reimbursement available to them. Bryant, 406 So.2d at 769.
In support of its contention that its otherwise applicable recovery under the LEQA should not be reduced by the amount of federal reimbursement, DOTD argues that the collateral source rule must be given a broad application to further the public policy considerations supporting it. DOTD notes that the "polluter pays" principle, a fundamental aspect of the public *740 policy embodied in environmental law, seeks to deter environmental contamination by placing the burden of that contamination on the polluter. Joslyn Mfg. Co. v. Koppers Co., Inc., 40 F.3d 750, 762 (5th Cir.1994). DOTD alleges that the elements of the collateral source rule are present in this case: KCS is not entitled to a credit for payments to DOTD provided independently of KCS's procuration or contribution.
KCS, on the other hand, asserts that courts have applied the collateral source rule only in limited contexts, specifically, in tort situations involving insurance and other proceeds procurable by the victim. KCS further argues that the LEQA is a penal statute, and that the collateral source rule cannot be applied in this case, as penal statutes must be strictly construed, citing Goodwin v. Agrilite, 26,601, p. 7 (La.App.2d Cir.9/21/94), 643 So.2d 249, 254.
Both courts below agreed with KCS. The court of appeal found that the collateral source rule, a tort-based concept with a limited application, did not apply in this environmental clean-up dispute, which "does not involve insurance, tort deterrence, or accident prevention," according to them. Louisiana Department of Transportation & Development v. Kansas City Southern Ry., 30,002, p. 36 (La. App.2d Cir.8/8/02), 827 So.2d 443, 461.
We reverse the court of appeal and hold that the collateral source rule applies in cases arising under the LEQA, at least where a damaged party is seeking reimbursement only for remediation expenses. If, after a trial on the merits, it is found to be legally responsible for some portion of the contamination present at the construction site, KCS cannot be exonerated from paying the full consequences of its act simply because DOTD independently obtained reimbursement in large part from FHWA for the clean-up costs incurred. This holding is not contrary to the existing jurisprudence of this state, and is consistent with the case law of numerous federal and state jurisdictions. Finally, our holding today is commanded by the paramount public interest in ensuring that those persons or entities responsible for harming our environment and the welfare of our citizens be held fully responsible for the consequences of their actions, and deterred from committing future violations of the LEQA.
We recognize that the collateral source rule is most commonly applied to insurance proceeds. Under this general rule, a tortfeasor's liability to an injured plaintiff should be the same, regardless of whether or not that plaintiff had the foresight to obtain insurance. Wooten v. Central Mut. Ins. Co., 182 So.2d 146, 148 (La.App. 3d Cir.1966). However, our courts have applied the doctrine to a range of situations where the collateral source is provided to the plaintiff by a government agency or even a gratuitous source.
For example, a tortfeasor's liability may not be reduced by the amount of a victim's medical expenses paid by Medicare. Womack v. Travelers Ins. Co., 258 So.2d 562, 568 (La.App. 1 Cir.1972); Weir v. Gasper, 459 So.2d 655, 658 (La.App. 4th Cir.1984); Cooper v. Borden, 709 So.2d 878, 882 (La.App. 2d Cir.1998). In Francis v. Brown, 671 So.2d 1041, 1046-47 (La. App. 3d Cir.1996), the court applied the collateral source rule and required the defendant to pay the full amount of the plaintiff's medical bills, including those amounts which had been paid by plaintiff's attorney. Additionally, a plaintiff's recovery is not reduced by the welfare payments received during period she did not work. Bonnet For and Behalf of Bonnet v. Slaughter, 422 So.2d 499, 502 (La.App. 4th Cir.1982).
*741 In each of the above-cited cases, the courts focused their analysis on the fact that a wrongdoer may not benefit, and an injured party's recovery may not be diminished, because of benefits received by the plaintiff from sources independent of the wrongdoer's procuration or contribution. As one court described the collateral source rule, "only payments already made by the tortfeasor can be used to grant the tortfeasor a credit towards the amount of the ... award." Coscino v. Wolfley, 696 So.2d 257, 264 (La.App. 4th Cir.1997).
We additionally believe it is mere happenstance that the collateral source rule has been applied chiefly in the context of a conventional La. Civ.Code art. 2315 tort. The court of appeal's finding that the collateral source rule is inapplicable to this "environmental clean-up dispute" because it "does not involve insurance, tort deterrence, or accident prevention" is erroneous. Because the particular concerns presented through application of environmental law have arisen relatively recently,[6] Louisiana courts have not had the opportunity to address the impact of statutes that impose duties affecting the environment on the collateral source rule. Like conventional tort cases, environmental law statutory remedies involve claims to recover damages for harm caused by a defendant's acts.[7] For the following reasons, the logic supporting application of the collateral source rule is equally persuasive whether we are dealing with a defendant polluter under the LEQA, or a traditional "tortfeasor" whose liability arises under La. Civ.Code art. 2315, or other general tort law.
A cause of action arising under an environmental statute, such as the LEQA, presents compelling public policy reasons supporting application of the collateral source rule. Louisiana citizens, speaking through the drafters of our 1974 Constitution, have established environmental preservation as a preeminent public policy concern:
The natural resources of the state, including air and water, and the healthful, scenic, historic, and esthetic quality of the environment shall be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people. The legislature shall enact laws to implement this policy.
La. Const. art. IX, § 1 (1974). When applying environmental laws, the concern prompting the collateral source rule's goals of tort deterrence and accident prevention is especially implicated, although in the context of deterring future acts in violation of the LEQA. See Suhor, 00-1628, p. 3, 770 So.2d at 424. The welfare of our environment and the health of our citizens command that those persons or entities which are found to have polluted our state pay full restitution for the consequences of their acts. Violators of the LEQA should not be allowed to escape the consequences of their actions because the federal government chooses to provide financial assistance to states in essential and time-sensitive clean-up operations.
*742 As we noted previously, Louisiana derives its collateral source rule from the common law; thus, we find persuasive other U.S. jurisdictions' application and interpretation of the collateral source rule. A review of the relevant case law indicates that courts do not restrict application of the collateral source rule to cases involving insurance payments and other benefits purchased by the injured party. To begin, the Restatement (Second) of Torts, § 920A provides:
(1) A payment made by a tortfeasor or by a person acting for him to a person he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.
(2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.
(Emphasis added). The comments to § 920A specifically note that social legislation benefits, such as social security and welfare payments, are subject to the collateral source rule.
The facts of Town of East Troy v. Soo Line Railroad Co., 653 F.2d 1123 (7th Cir.1980), are strikingly similar to the facts of the case at hand. A tank car and eighteen other railroad cars being transported by the defendant Soo Line derailed within the limits of the plaintiff town. Id. at 1125. The tank car, carrying 20,000 gallons of phenol, ruptured and spilled its contents onto the ground. Id. Shortly thereafter, residents of the plaintiff town, who had relied on shallow private wells for water use, began to notice signs of phenol in their water. Id. To remedy the problem, the town constructed a centralized deep well public water system. Id. The town paid the costs of construction with a $500,000 Community Development Grant from the U.S. Department of Housing and Urban Development.
The district court held defendant Soo Line responsible for the accident and awarded damages to the town. Id. at 1132. Soo Line argued on appeal that the town had suffered no injury because it had remedied any damage using the federal grant, and, therefore, could not recover damages. Id. The Seventh Circuit Court of Appeals applied the collateral source rule, holding that the town's recovery could not be reduced because of reimbursement by an independent source for damages caused by Soo Line. Id. The court reasoned that double recovery for a plaintiff is preferable to allowing a defendant to avoid paying the consequences of his wrongful acts, as double recovery is often "the routine result of application of the collateral source rule." Id.
The same federal circuit court had previously refused to reduce the liability of a defendant corporation which had sold diseased fish to a plaintiff, where that plaintiff had secured $51,000 in federal funds to compensate for the loss of the fish. Roundhouse v. Owens-Illinois, Inc., 604 F.2d 990, 994 (6th Cir.1979). The Roundhouse court recognized that the collateral source rule is most commonly applied to insurance payments, yet concluded that the crucial component of the doctrine "is whether the source of the funds is independent of (collateral to) the wrongdoer." Id.
In Hall v. Miller, 143 Vt. 135, 465 A.2d 222, 226 (1983), the court applied the collateral source rule to a breach of warranty action against a defendant who sold the plaintiff cattle infected with brucellosis. Under state and federal indemnification programs designed to encourage prompt compliance with disposal orders and prevent further spread of the disease, plaintiff *743 received a total payment of over $9,000. Id. The court reasoned that the defendant should not be allowed to argue in mitigation that someone else, with whom he has no connection, has indemnified the injured party. Id. The court rejected the defendant's argument that his liability should be reduced because the plaintiff's recovery was completely fortuitous and in no way the result of the plaintiff's foresight or expense: "as between the two parties, it is better that the injured plaintiff recover twice than the breaching defendant escape liability altogether." Id.
In Wheatland Irrigation District v. McGuire, 562 P.2d 287, 302 (Wyo.1977), the plaintiff property owners brought an action to recover flood damage to their property caused by the rupture of the defendant irrigation district's dam. The court applied the collateral source rule to funds plaintiffs received from the federal government's flood relief program. According to the court, the fact that benefits have been received from governmental sources does not preclude application of the rule. Id. (citing Joshmer v. Fred Weber Contractors, 294 S.W.2d 576, 586 (Mo. Ct.App.1956) (relief payments)). See also Alesko v. Union Pacific R.R. Co., 62 Idaho 235, 109 P.2d 874, 878 (1941) (holding that collateral source rule barred evidence of governmental relief benefits for flood damage caused by defendant). Additionally, in Buckley Nursing Home, Inc. v. Massachusetts Commission Against Discrimination, 20 Mass.App.Ct. 172, 478 N.E.2d 1292, 1299-1300 (1985), the court refused to offset welfare payments received by the plaintiff against the defendant's liability for damages. The court in Gatlin v. Methodist Medical Center, 772 So.2d 1023, 1032-33 (Miss.2000), also applied the collateral source rule to funeral payments made by a victim's rights fund, which were obtained through no effort of the plaintiff.
The overwhelming authority, therefore, supports our holding today in this case that the collateral source rule applies to the reimbursement DOTD received from FHWA. A wrongdoer's liability should not be reduced by the amount of collateral source payments to an injured plaintiff, even where the nature of the collateral source is a public relief provided to the plaintiff by application of federal or state law. The court of appeal and KCS erroneously focus the analysis on whether DOTD will receive a windfall if allowed to recover the full measure of damages from KCS after having been previously reimbursed by FHWA. Other state and federal jurisdictions, however, have generally not been concerned with allowing a plaintiff to receive a windfall as a result of the collateral source rule. See e.g., Town of East Troy, 653 F.2d at 1132; Hall, 465 A.2d at 226.[8] The federal Second Circuit Court of Appeals, in applying the collateral source rule to an action brought under the Carriage of Goods by Sea Act, aptly noted that "the question is not whether a windfall is to be conferred, but rather who shall receive the benefit of a windfall which already exists.... This may permit a double recovery, but it does not impose a double burden. The tortfeasor bears only the single burden for his wrong." Thyssen, Inc. v. S/S Eurounity, 21 F.3d 533, 538 (2d Cir.1994) (citing Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525, 534 (9th Cir. 1962)).
Similarly, in the present case, we must choose between allowing DOTD a *744 possible windfall,[9] or allowing the liability of potential wrongdoer under the LEQA to be reduced by the 90 percent federal share. We find that the former option is preferable and is not inconsistent with existing Louisiana jurisprudence. As the court in Griffin determined:
the focus of the collateral source rule is that a tortfeasor should not be allowed to benefit from the victim's foresight and prudence in securing insurance and other benefits. Thus, the focus of our analysis should be on the nature of the write-offs vis-a-vis the tortfeasor, rather than vis-a-vis the tort victim.... To allow such a reduction in the tortfeasor's liability would indeed be a "windfall"inuring to the benefit of the tortfeasor! This is precisely what the collateral source rule is designed to prevent.
Griffin, 99-2944, p. 36, 802 So.2d at 714-15 (emphasis added). Although the Griffin court was discussing the collateral source rule's most common application to insurance payments in tort cases, the logic applies with equal force to the facts and circumstances at hand. The Fourth Circuit Court of Appeal, in discussing the collateral source rule generally, has also noted that, for policy reasons, "double recovery is justified in some cases because the tortfeasor should not receive the benefits of the victim's thrift, employment benefits, or special services rendered by a third party." Suhor, 00-1628, p. 3, 770 So.2d at 424.
It is important to note that if DOTD eventually obtains a judgment against KCS after a full merits trial, FHWA may later seek, and indeed is likely to collect, a portion of this judgment from DOTD as reimbursement for the clean-up costs it provided.[10] Actual ownership or utilization of the proceeds from any judgment which may be rendered against KCS is an issue for another day. Therefore, it speculative at this point whether DOTD will actually receive a windfall or double recovery by being allowed to receive a judgment against KCS for the entirety of the remediation costs.
Finally, we address KCS's contention that the LEQA is a penal statute, and thus should not implicate the collateral source rule. We take KCS's argument to be that the collateral source rule, as a permissible facilitation of multiple recovery, is defensible only if what the tortfeasor pays is the actual remedial cost imposed upon the victim by the tortfeasor's conduct. According to KCS, a statute that is penal in nature, and which imposes a greater penalty than mere remediation is not an appropriate application or extension of the collateral source rule. KCS cites Goodwin, 26,601, p. 7, 643 So.2d at 254, which noted that LEQA § 30:2276(G) is penal and must be strictly construed.
The Goodwin case did find that LEQA § 30:2276(G) was a penal statute because it speaks to double recovery of remediation costs. It is true that sections 30:2276(G)(1) and (G)(2) are penal because they provide that polluters are liable for twice their portion of the remedial costs of clean-up. However, another statutory provision, LEQA § 30:2276(G)(3), was added to the statute in 1993, after the Goodwin cause of action arose, and this new provision, unlike the other portions of the *745 statute, grants an injured party a cause of action to recover remediation costs only. See La. Acts. No. 986, § 1 (1993). The Goodwin court specifically stated that its holding did not apply to the recent amendment adding subsection (G)(3). Goodwin, 26,601, p. 8, 643 So.2d at 255. DOTD's petition and brief to this court specifically recite that it is pursuing a cause of action under LEQA § 30:2276(G)(3). Thus, the fact that Goodwin referred to other sections of the statute as penal is of no moment to DOTD's claim. DOTD is simply seeking to hold an alleged polluter responsible for the actual damage it caused. Therefore, there is no merit to KCS's assertion that DOTD is impermissibly relying on a penal statute for its recovery.

CONCLUSION
We hold today that the collateral source rule applies to DOTD's action against KCS for the costs incurred to clean-up the highway construction site. Any judgment to be rendered by the district court against KCS should not be reduced by the ninety percent federal share of the remediation funded by FHWA. This holding is commanded by Louisiana's unique constitutionally enunciated public policy of environmental protection and preservation, coupled with the public policy supporting the collateral source rule. Persons or entities found to have violated the LEQA must pay the full measure of damages they caused, and cannot escape liability because our state is independently entitled to reimbursement of ninety percent of remediation costs from a federal agency.
We emphasize that our holding today is a narrow one addressing the applicability of the collateral source rule in the circumstances of this case. The resolution of the discrete legal issue posed at this juncture should have no bearing on whether KCS is either actually responsible for some part of the contamination, or whether it is legally bound to pay for all or part of the remediation. In fact, KCS has vehemently denied that the 1966 train derailment contributed in any way to the site's pollution. The issue of liability is to be resolved by the district court after a trial on the merits.

DECREE
Accordingly, the judgments of the lower courts are reversed, and the case remanded to the district court for proceedings consistent with this opinion.
REVERSED; REMANDED TO DISTRICT COURT.
NOTES
[1] La.Rev.Stat. 30:2276 provides in pertinent part:

A. The court shall find the defendant liable to the state for the costs of remedial action taken because of an actual or potential discharge or disposal which may present an imminent and substantial endangerment to health or the environment at a pollution source or facility, if the court finds that the defendant performed any of the following:
(1) Was a generator who generated a hazardous substance which was disposed of or discharged at the pollution source or facility.
(2) Was a transporter who transported a hazardous substance which was disposed of or discharged at the pollution source or facility.
(3) Was a disposer who disposed of or discharged a hazardous substance or hazardous waste at the pollution source or facility.
(4) Contracted with a person for transportation or disposal at the pollution source or facility.
(5) Is or was the owner or operator of the pollution source or facility subsequent to the disposal of hazardous waste.
B. The court does not have to find that the defendant was negligent, knew that the hazardous substance was being improperly disposed of, or that the activity was illegal at the time of disposal.
C. The defendant shall be responsible for his proportionate contribution to the remedial costs as defined in this Chapter.
* * *
G.
* * *
(3) In furtherance of the purpose of this Chapter, a person who has incurred remedial costs in responding to a discharge or disposal of a substance covered by this Chapter, without the need for an initial demand by the secretary, may sue and recover such remedial costs as defined in R.S. 30:2272(9) from any person found by a court to have performed any of the activities listed in Subsection A if the plan for remedial action was approved by the secretary in advance or, if an emergency, the secretary was notified without unreasonable delay and the secretary accepts the plan thereafter.
[2] DOTD asserted that Crystal was liable for remedial costs of clean-up because Crystal's predecessor company owned the site, upon which an oil refinery leaked hazardous material. Crystal subsequently operated an oil refinery or barrel topping facility at which Crystal generated and disposed of additional hazardous material at the site.
[3] DOTD argued that FHWA's reimbursement was irrelevant to the issue of DOTD's liability, or, alternatively, that any probative value would be substantially outweighed by the danger of jury confusion or prejudice to DOTD.
[4] The documents considered by the district court in the hearing on defendants' motion for partial summary judgment were: (1) "Interim Guidance for Hazardous Site Affecting Highway Project Development," dated August 1988; (2) FHWA letter from Virginia Cherwek; (3) FHWA letter from Jean Rogers, Regional Counsel; and (4) FHWA letter from Wilbert Baccus, Associate Chief Counsel. It is unnecessary to the disposition of this case for this court to discuss the contents of these documents. The court of appeal opinion provides a thorough description. See Louisiana Department of Transportation & Development v. Kansas City Southern Ry. Co., 36,002, p. 15-18 (La.App.2d Cir.8/8/02), 827 So.2d 443, 451-54.
[5] The affidavits DOTD attached to its Motion for New Trial were: (1) affidavit of William A. Sussman, the FHWA Louisiana Division Administrator; (2) affidavit of Kam Movassaghi, Secretary of DOTD; (3) affidavit of Wilbert Baccus of the FHWA.
[6] The legislature passed the LEQA in 1984. Acts 1984, No. 791, § 1.
[7] One court has analogized the citizen suit cause of action under the LEQA to a tort cause of action, and applied the one-year prescription applicable to torts. See Morris & Dickson Co. v. Jones Bros. Co., 29, 379, p. 24 (La.App.2d Cir.4/11/97), 691 So.2d 882, 895 (citing Kenneth M. Murchison, Enforcing Environmental Standards Under State Law: The Louisiana Environmental Quality Act, 57 La. L.Rev. 497, 555 (1997)).
[8] The comments to Restatement (Second) of Torts § 920A (1979) state "to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff's injury."
[9] It is not likely that DOTD will actually enjoy a double recovery in light of its representation to this court and the lower courts that it will repay FHWA the ninety percent federal share of any judgment obtained.
[10] DOTD asserts that it will reimburse FHWA on its own, but, even if it does not, DOTD contends that FHWA will nonetheless seek recovery of its ninety percent participation from any judgment DOTD obtains.