# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-134


MARY CUTSINGER

VERSUS

LAURA REDFERN, USAGENCIES CASUALTY
INSURANCE COMPANY, INC., AND STATE FARM
MUTUAL AUTOMOBILE INSURANCE COMPANY

**************
APPEAL FROM THE
PINEVILLE CITY COURT
PARISH OF RAPIDES, DOCKET NO. 07-0007
HONORABLE J. PHILLIP TERRELL, JR., CITY COURT JUDGE


**************
SYLVIA R. COOKS
JUDGE
**************


Court composed of Sylvia R. Cooks, James T. Genovese, and Chris J. Roy, Sr.[1], Judges.

Genovese, J., concurs in part, dissents in part, and assigns reasons.

**AFFIRMED.**


**Thomas O. Wells**
**1254 Dorchester Drive**
**P.O. Box 13438**
**Alexandria, LA 71315**
**(318) 445-4500**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
        **Mary Cutsinger**

**Bonita Preuett-Armour**
**Rebecca Boyett**
**Armour Law Firm**
**1744 Jackson Street**
**Alexandria, LA 71301**
**(318) 442-6611**
**COUNSEL FOR DEFENDANT/APPELLANT:**
        **State Farm Mutual Automobile Insurance Company**

---

[1] Judge Chris J. Roy, Sr. appointed judge pro tempore of the Court of Appeal, Third Circuit.

**COOKS, Judge.**

In this personal injury case, the Defendant, State Farm Mutual Automobile Insurance Company (State Farm), appeals that portion of the trial court's grant of summary judgment in favor of the Plaintiff, Mary Cutsinger, holding that State Farm, Ms. Cutsinger's uninsured/underinsured (UM) automobile insurance carrier, was not entitled to reduce the amount of UM coverage available to her under its policy by the amount of workers' compensation benefits paid to Ms. Cutsinger by her employer's workers' compensation carrier. For the following reasons, we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

On December 12, 2006, while engaged in the course and scope of her employment with Guardian Angels, Ms. Cutsinger was involved in an automobile accident with Laura Redfern, in Pineville, Louisiana. As a result, Ms. Cutsinger filed a claim for workers' compensation benefits and subsequently instituted the present action against Ms. Redfern, her liability carrier, USAgencies Casualty Insurance Company (USAgencies),[2] and State Farm, Ms. Cutsinger's UM insurer.

In a motion for summary judgment, Ms. Cutsinger asserted: (1) that Ms. Redfern was solely at fault for the subject accident; (2) that the automobile liability insurance policy issued to her by State Farm provided UM coverage; and (3) that "State Farm is not entitled to a credit nor is [it] allowed to reduce the uninsured motorist coverage afforded [to Ms.] Cutsinger by any payments that may be made by the employer of [Ms.] Cutsinger or the worker[s'] compensation carrier." Following a hearing, the trial court issued written reasons for judgment, and then signed a formal judgment granting Ms. Cutsinger's motion for summary judgment. State Farm

---

[2] USAgencies was subsequently dismissed from this litigation via summary judgment based upon the effective date of cancellation of its policy prior to the occurrence of the accident at issue.

-1-

appeals that portion of the trial court's judgment disallowing it a credit or reduction for the UM coverage available under its policy equal to the amount of workers' compensation benefits paid to Ms. Cutsinger by the workers' compensation carrier.

## ANALYSIS

In *Beard v. Grey Wolf Drilling Co.*, 00-345, pp. 2-3 (La.App. 3 Cir. 11/2/00), 774 So.2d 287, 288-89, we set forth the standard of appellate review of summary judgments:

> At the outset, we note that appellate courts review summary judgments *de novo* under the same criteria that governed the trial court's consideration of whether or not summary judgment was appropriate. *Schroeder v. Board of Sup'rs of La. State Univ.*, 591 So.2d 342 (La.1991); *Soileau v. D & J Tire, Inc.*, 97-318 (La.App. 3 Cir. 10/8/97); 702 So.2d 818, *writ denied*, 97-2737 (La.1/16/98); 706 So.2d 979. Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).
>
> . . . .
>
> The threshold question in reviewing a trial court's grant of summary judgment is whether a genuine issue of material fact remains. *Kumpe v. State*, 97-386 (La.App. 3 Cir. 10/8/97); 701 So.2d 498, *writ denied*, 98-50 (La.3/13/98); 712 So.2d 882. Thereafter, we must determine whether reasonable minds could conclude, based on the facts presented, that the mover is entitled to judgment. *Id*. Thus, summary judgment is appropriate when all relevant facts are brought before the court, the relevant facts are undisputed, and the sole remaining issue relates to the legal conclusion to be drawn from the facts. *Id.*

State Farm contends, as a matter of law, it is entitled to a credit for the workers' compensation benefits received by Ms. Cutsinger because "the uninsured motorist carrier and the worker[s'] compensation carrier are solidary obligors and a payment by one inures to the benefit of the other."

In finding State Farm was not entitled to a credit for medical and disability wage benefits paid to Ms. Cutsinger by the workers' compensation carrier, the trial court apparently relied on this court's ruling in *Bellard v. American Cent. Ins. Co.*,

06-958 (La.App. 3 Cir. 5/30/07), 958 So.2d 107. In that case, a panel of this court determined that a UM carrier is not entitled to a credit for medical and disability wage benefits paid on behalf of or to an injured worker by a workers' compensation carrier. The Louisiana Supreme Court granted writs in that case "to resolve [the] conflict in the courts of appeal with respect to [that issue]." *Bellard v. American Cent. Ins. Co.*, 07-1335, 07-1399 (La. 4/18/08), 980 So.2d 654, 658. Our supreme court in *Bellard* framed the issue as follows:

> [T]he analytical framework for resolving the issue of whether an uninsured motorist carrier is entitled to a credit for workers' compensation benefits paid to an injured worker hinges on two inquiries: (1) whether the insurers are solidary obligors; and (2) whether the collateral source doctrine applies. If the uninsured motorist carrier and the workers' compensation insurer are solidary obligors, then, pursuant to the provisions of LSA-C.C. art. 1794, "performance rendered by one of the solidary obligors relieves the others of liability toward the obligee," and the uninsured motorist carrier is entitled to a credit for amounts paid by the workers' compensation carrier. If the collateral source doctrine applies, payments received from a source independent of the tortfeasor's procuration or contribution are not deducted from the award the injured plaintiff receives from the tortfeasor and the plaintiff is entitled to recover the same damages from both the employer's uninsured motorist carrier and the workers' compensation insurer. *Bozeman v. State*, 03-1016, p. 9 (La. 7/2/04), 879 So.2d 692, 698.

*Id.* at 663.

The supreme court in *Bellard* found all the requirements for a solidary obligation were present, and concluded "that the employer's uninsured motorist carrier and the employer and/or its worker[s'] compensation insurer [were] solidary obligors, having coextensive obligations to reimburse the plaintiff for lost wages and medical expenses incurred as a result of his injury." *Id.* at 667.

However, the facts presented in this case are different from those in *Bellard*. In this case, Ms. Cutsinger purchased her own uninsured motorist coverage, while in *Bellard*, the uninsured motorist coverage was purchased by Bellard's employer, Sav-

Mor. It is undisputed Ms. Cutsinger paid for the UM policy and her patrimony was diminished to obtain these benefits. In discussing the applicability of the collateral source rule, the *Bellard* court stated:

> The collateral source rule is a doctrine of common law origin, jurisprudentially imported into the law of this state. *Bozeman*, 03-1016 at 8, 879 So.2d at 697; *Louisiana Department of Transportation and Development v. Kansas City Southern Railway Co.*, 02-2349, p. 6 (La. 5//20/03), 846 So.2d 734, 739. Basically, the rule provides that "a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." *Bozeman*, 03-1016 at 9, 879 So.2d at 698; *Louisiana Department of Transportation and Development*, 02-2349 at 6, 846 So.2d at 739. Under the collateral source rule, payments received from an independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer. *Id.* As a result, the tortfeasor is not allowed to benefit from the victim's foresight in purchasing insurance and other benefits. *Bozeman*, 03-1016 at 9, 879 So.2d at 698.
>
> Several public policy concerns support the collateral source doctrine. *Louisiana Department of Transportation and Development*, 02-2349 at 7, 846 So.2d at 739. The concern most often voiced is that the tortfeasor should not gain an advantage from outside benefits provided to the victim independently of any act of the tortfeasor. *Id.* The objective in this regard is to promote tort deterrence and accident prevention. *Id.* Another concern advanced is that, absent the collateral source rule, victims would be dissuaded from purchasing insurance or pursuing other forms of reimbursement available to them. *Id.*
>
> Of the reasons cited in support of the rule, "[t]he major policy reason for applying the collateral source rule to damages has been, and continues to be, tort deterrence." *Bozeman*, 03-1016 at 12, 879 So.2d at 700. In other words, the rule is grounded in the belief that the tortfeasor should not profit from the victim's prudence in obtaining insurance, and that reducing the recovery by the monies paid by a third party would hamper the deterrent effect of the law. *Bozeman*, 03-1016 at 15-16, 879 So.2d at 701-02.

*Id.* at 667-68 (footnote omitted).

The *Bellard* court was troubled by one possible consequence of the collateral source rule: the plaintiff may reap the benefit of a double recovery or a windfall resulting from payment by a third party for the same damages the tortfeasor or employer has been cast or is legally bound to pay. But the *Bellard* court was not

prepared to "do away with" the collateral source rule despite this perceived consequence. To the contrary, the court limited its holding to the facts in that case. The supreme court in *Bellard*, when discussing whether the collateral source rule applied, specifically used the terms "to the facts of this case" and "under the facts of this case." Clearly, the court intended to signal that the *Bellard* holding was not universal and did not apply in all instances involving dual coverage. The court specifically held the collateral source rule is still applicable in cases where the employer or tortfeasor has not paid for or otherwise secured the UM insurance. As stated earlier, the facts in the present case are different than those in *Bellard,* in that Ms. Cutsinger paid for her own UM insurance. The *Bellard* court noted *Bozeman* "instructs that where, as here, the plaintiff pays no enrollment fee, has no wages deducted, and otherwise provides no consideration for the collateral source benefit, the collateral source rule does not apply." *Id.* at 670. In this case, Ms. Cutsinger did pay a consideration for the acquisition of the collateral source benefit; thus, the collateral source rule applies.[3]

### DECREE

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of Ms. Cutsinger, disallowing State Farm a reduction of the UM benefits payable under its policy by the amount of workers' compensation benefits paid to Ms. Cutsinger by her employer's workers' compensation carrier. Costs of this appeal are assessed against State Farm.

**AFFIRMED.**

---

[3] We do note that the fourth circuit in *Molony v. United Services Automobile Ass'n*, 96-1747 (La.App. 4 Cir. 11/9/96), 683 So.2d 891, *writ denied*, 96-2915 (La. 2/21/97), 688 So.2d 515, held that the UM carrier and the workers' compensation carrier are solidarily liable, and that the medical and wage benefit paid by one exonerates the other. *Molony* was decided before the Supreme Court's recent pronouncements in *Bellard*.

MARY CUTSINGER

VERSUS

LAURA REDFERN, USAGENCIES CASUALTY
INSURANCE COMPANY, INC., AND STATE FARM
MUTUAL AUTOMOBILE INSURANCE COMPANY

**GENOVESE, J., concurs in part, dissents in part, and assigns reasons.**

These same issues of solidary liability and the collateral source rule were recently presented to and addressed by our supreme court in *Bellard v. American Central Insurance Co.*, 07-1335, 07-1399 (La. 4/18/08), 980 So.2d 654. Though I do not agree with that decision relative to the issue of solidary liability between the workers' compensation carrier and the uninsured/underinsured (UM) automobile insurance carrier, and the application *vel non* of the collateral source rule, I do find *Bellard* to be controlling and, "[a]s a court of appeal, we are bound to follow the decisions of our supreme court." *Chavier v. Lay Down Serv. Inc.*, 00-701, p. 5 (La.App. 3 Cir. 12/20/00), 776 So.2d 634, 638, *writ denied*, 01-880 (La. 5/25/01), 793 So.2d 203 (citing *PPG Indus., Inc. v. Bean Dredging Corp.*, 419 So.2d 23 (La.App. 3 Cir.), *writ granted*, 422 So.2d 151 (La.1982), *aff'd*, 447 So.2d 1058 (La.1984)).

To the extent that the Plaintiff in this case is entitled to be made whole with regard to the damages sustained by her and legally owed by the tortfeasor in accordance with La.Civ.Code art. 2315, I concur with the majority that the collateral source rule applies. In all other respects, and in order to yield to the mandate of *Bellard*, I must respectfully dissent.

The majority in this case attempts to distinguish *Bellard* on the grounds that it involved employer-supplied UM insurance coverage as opposed to UM coverage

bought and paid for by the Plaintiff herein.  In my reading of *Bellard*, our supreme court was fully aware of that distinction, especially considering the fact that it cited cases wherein the UM carrier was a plaintiff's own UM insurer.  It specifically found the employer's workers' compensation carrier and UM carrier to be solidarily liable and that the collateral source rule did not apply to override the principles of solidary liability expressly set forth in the civil code.

Consequently, I must respectfully concur in part, and dissent in part, from the majority opinion in this case.