# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-1014

THOMAS F. WELCH, ET AL.

VERSUS

OAKDALE COMMUNITY HOSPITAL AND DR. PATRICK S. SAVOY

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-99-083
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

**********

## MARC T. AMY
## JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Michael G. Sullivan, Judges.

**AFFIRMED.**

Thibodeaux, C.J., dissents and assigns written reasons.

W. Paul Hawley
The Glenn Armentor Law Corporation
300 Stewart Street
Lafayette, LA   70501
(337) 233-1471
COUNSEL FOR PLAINTIFFS/APPELLANTS:
    Thomas F. Welch, et al.

James R. Shelton
Durio, McGoffin, Stagg & Ackermann
Post Office Box 51308
Lafayette, LA   70505-1308
(337) 233-0300
COUNSEL FOR DEFENDANTS/APPELLEES:
    Oakdale Community Hospital
    Dr. Patrick S. Savoy

AMY, Judge.

The plaintiff filed suit alleging that hernia surgery performed by the defendant surgeon caused damages requiring extensive medical care and significant changes in his quality of life. Following trial, a jury found in favor of the defendant. The plaintiff appeals, alleging that the jury's verdict was manifestly erroneous and, also, that a reference by defense counsel during closing arguments violated the collateral source rule. For the following reasons, we affirm.

**Factual and Procedural Background**

On January 2, 1998, the plaintiff, Thomas Welch, underwent a laparoscopic bilateral hernia repair at Oakdale Community Hospital. The procedure was performed by the defendant, Dr. Patrick Savoy, a general surgeon. As explained at trial, the procedure requires that the abdominal lining, the peritoneum, be pierced and the hernia subsequently repaired through the use of mesh which is stapled to the Cooper's Ligament and the abdominal wall. The mesh is subsequently covered by the peritoneum previously lifted away. This peritoneum flap is then secured using surgical staples.

The plaintiff contends that the damages alleged in the instant case occurred when Dr. Savoy secured the peritoneum over the surgical mesh, inadvertently placing two surgical staples around the spermatic cord. It is unquestioned that the staples' impingement of the spermatic cord would be below the applicable standard of care.

The plaintiff contends that, following surgery, he began to experience increasing pain, including sensations of stinging. In subsequent, post-operative visits, the plaintiff complained of a ripping sensation in his right groin/testicle area. On January 28, 1998, the plaintiff reported to the emergency room at Rapides Regional Medical Center in Alexandria, Louisiana, reporting a "48 hour history of abdominal

pain in the lower side, nausea, vomiting which ha[d] become particularly severe over the past 24 hours." Dr. David Remedios, a general surgeon, testified that his initial impression of the condition was that it was appendicitis, but that he informed the plaintiff that the pain could be related to the hernia repair. Surgery was performed, with Dr. Remedios performing an appendectomy. However, Dr. Remedios found that the condition of the appendix did not fully explain the plaintiff's symptoms and the presence of "cloudy peritoneal fluid." Therefore, he performed further exploratory surgery, finding a mesentary tear along with a surgical staple he opined had been used by Dr. Savoy to repair the tear. Dr. Remedios denied tearing the mesentary himself during his procedure. Dr. Remedios and Dr. David Rayburn, a consulting surgeon called into the surgery, felt that the tear was an old one. Both surgeons reported seeing exposed mesh in the area, but denied pulling, stapling, or attempting to cover the mesh. However, during the procedure, adhesions which had formed after the hernia repair performed by Dr. Savoy were taken down by Dr. Remedios.

Following Dr. Remedios' procedure, the plaintiff, again, continued to experience pain. In June 1998, he reported to Dr. Charles Brunicardi, a general surgeon and Chairman of the Department of Surgery at Baylor College of Medicine in Houston. The plaintiff complained of severe right inguinal pain which extended into his right testicle. Dr. Brunicardi performed surgery, finding the mesh used in the initial surgery had come partially loose and was "bundled" in the area. The area was repaired. Central to this case was his additional discovery of two staples "incarcerating" the spermatic cord. He opined that the staples were inadvertently placed in the area at the time Dr. Savoy was closing the peritoneum. He testified that this type of placement was below the applicable standard of care and was responsible for the type of pain experienced by the plaintiff. After Dr. Brunicardi's surgery, the

2

plaintiff again complained of pain, requiring, in July 2002, a follow-up surgery to repair the hernia once again.

In March 2000, the plaintiff filed the petition instituting this malpractice action against Dr. Savoy.[1] He alleged that Dr. Savoy rendered negligent care in the initial January 1998 bilateral hernia repair. Specifically, the plaintiff alleged that Dr. Savoy negligently placed two staples around the spermatic cord. He contends this occurred while Dr. Savoy was reattaching the peritoneum at the close of surgery. He sought damages associated with his condition. His daughter and wife sought damages for loss of consortium.[2] Following a trial at which both parties presented expert testimony, the jury returned a verdict in favor of the defendant, concluding that it was not proven that Dr. Savoy breached the applicable standard of care.

The plaintiff appeals, assigning the following as error:

[1]     The Jury improperly completely ignored the opinions of the principal five attending physicians, four of whom were General Surgeons such as the Defendant Dr. Savoy, another of whom was a Pain Specialist, a sixth physician who was a General Surgeon who examined records, and the uncontradicted testimony of lay witnesses presented by the Plaintiffs in reaching a decision that the Defendant had not breached the standard of care owed to the Plaintiff Thomas F. Welch and caused damages to the Welchs.

[2]     The Trial Court allowed counsel for the Defendant Dr. Savoy to state in closing argument over objection that there was no proof that Mr. Welch had incurred the $75,434.09 in medical expenses that he was asserting a claim for, which was a clear violation of the Collateral Source Rule, which allowed the Defendant an improper and extremely prejudicial opportunity to attack the credibility of the Plaintiff Mr. Welch.

**Discussion**

*Standard of Care*

---

[1]The plaintiff also named Oakdale Community Hospital as a defendant. The hospital, however, was released through a partial final summary judgment in its favor.

[2]For ease of discussion, the plaintiffs will be referenced collectively as "Plaintiff."

The plaintiff first contends that the jury erred in failing to find that Dr. Savoy breached the standard of care in the treatment rendered. Specifically, the plaintiff contends that the jury erred in failing to accord appropriate weight to the testimony of its witnesses, several of whom had rendered treatment in the case, *e.g.*, Dr. Brunicardi, Dr. Remedios, Dr. David Rayburn, and Dr. Bruce Rayburn. He asserts in his brief to this court that the instant matter is not a simple contest of experts on either side of the litigation, but that he presented "an overwhelmingly convincing case of malpractice based on the opinions of highly trained and experienced treating physicians who actually looked at and worked on the catastrophic condition of Mr. Welch following Dr. Savoy's surgery." The plaintiff further asserts that "[t]he Defendant's evidence was based on unsubstantiated theories of what might have happened, when, and why, guesses at best which favored Dr. Savoy."

La.R.S. 9:2794 sets forth the burden of proof applicable to medical malpractice claims, providing, in part:

> A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., . . . the plaintiff shall have the burden of proving:
>
> (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians . . . within the involved medical specialty.
>
> (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
>
> (3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

4

In this case, it is the lack of the "use of reasonable care or diligence" described in La.R.S. 9:2794(A)(1) or breach of the standard of care, that the jury found that the plaintiff failed to prove. On appeal, a jury's determination as to this element of recovery is considered under the manifest error standard of review. *Martin v. E. Jefferson Gen. Hosp.*, 582 So.2d 1272 (La.1991).

Our review of the record reveals support for plaintiff's position. As explained above, several surgeons, including those who treated the plaintiff, explained that they felt that the plaintiff's troubled recovery and ongoing pain were related to staples misplaced during the surgery performed by the defendant. Certainly the jury could have accepted the opinions and observations of those surgeons. However, the jury chose not to do so, preferring instead the testimony offered by the defendant.

First, the defendant explained the procedure he employed in the January 1998 surgery, denying that he had placed staples in the spermatic cord. He reported no occurrences out of the ordinary during the procedure. Furthermore, the jury was made aware that the Medical Review Panel convened in the matter found that the defendant did not breach the standard of care. Finally, a member of the Medical Review Panel, Dr. Chapman Lee, a general surgeon and Chief of Services at Earl K. Long Charity Hospital in Baton Rouge, testified that he reviewed the reports and found the defendant's actions to be within the standard of care.

Dr. Lee explained that nerve injury resulting in the type of complaints experienced by the plaintiff are a material risk of the hernia repair procedure. Dr. Lee noted that, in his opinion, the plaintiff's condition resulted from the inflammatory processes the plaintiff's body underwent following surgery. He was not of the opinion that the injury resulted from the staples found by Dr. Brunicardi. With regard to the location of the staples on the spermatic cord, he disagreed with Dr. Brunicardi's

5

testimony regarding whether the staples were "clamped" around the spermatic cord. Although this type of clamping would indicate direct application, Dr. Lee denied that this could have occurred without the death of the surrounding tissue. It was his opinion that the staples were loosened from the mesh used to repair the hernia, migrated to the cord, and then were found lying in the surrounding tissue. While Dr. Lee did not find this to be the cause of the plaintiff's pain, he did explain that it could account for the presence of the staples found by Dr. Brunicardi.

While the testimony presented at trial was extensive, in sum, the jury was aware that Dr. Lee, along with the Medical Review Panel, concluded that the evidence did not support the finding that Dr. Savoy breached the applicable standard of care. The jury chose to credit this version of events. As explained by the supreme court, "where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong." *Martin*, 582 So.2d at 1277. Although the plaintiff characterizes the defendant's testimony and that of his expert as self-serving, our review indicates that it provided a rational basis on which the jury could have reached its determination. Accordingly, this assignment lacks merit.

*Collateral Source Rule*

Next, the plaintiff questions a reference made during the defendant's closing argument indicating that the plaintiff failed to demonstrate that he had to pay his incurred medical expenses or that a bill for those expenses had been forwarded to him for payment. While the plaintiff does not contest that the $75,000 in medical expenses incurred was paid by his workers' compensation provider, he contends that this statement violated the collateral source rule and is clear error on the record. The defendant contends that the reference was necessary as the plaintiff's wife referred to receipt of workers' compensation benefits during her testimony.

The Louisiana Supreme Court has explained that: "Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." *La. DOTD v. Kan. City S. Ry. Co.*, 02-2349, p. 6 (La. 5/20/03), 846 So.2d 734, 739.

Our review of the alleged error indicates that no correction by this court is required. First, as is pointed out by the parties in their briefs, there is no objection to the comment noted in the record. Rather, the plaintiff alleges that the defense counsel informed the trial court prior to his closing argument that reference would be made to the fact and that his objection to this reference was made during an unrecorded bench conference. Even if we were to find the comment inappropriately made, an issue we do not address, we note that any error would be harmless. The jury was aware of the stipulated medical expenses and was apprized by the trial court in instructions as to the award of damages that: "Also, you should not add or subtract from the award because of any social security, disability, or welfare benefits." For these reasons, we find no action required on this assignment of error.

**DECREE**

For the foregoing reasons, the decision of the trial court is affirmed. All costs of this proceeding are assessed against the appellants, Thomas F. Welch and Yvette Welch, individually and on behalf of their minor daughter, Loren Welch.

**AFFIRMED.**

THOMAS F. WELCH, ET AL.

VERSUS

OAKDALE COMMUNITY HOSPITAL AND DR. PATRICK S. SAVOY

THIBODEAUX, J., dissenting.

I believe the jury's verdict is clearly wrong. The record in this case does not support a conclusion that not one, but *two* staples were inexplicably loosened from the mesh used in the hernia repair and then migrated to the spermatic cord. Dr. Brunicardi, one of the physicians who examined, treated, and operated on Mr. Welch following his hernia surgery, has never seen a report of a staple traveling on its own to the spermatic cord. This is a physician who performs more than 500 such operations in a year and has done over 1,000 laparoscopic hernia repair surgeries. Neither has Dr. Phillip Shadduck, a general surgeon, who testified on plaintiff's behalf and the bulk of whose practice consists of laparoscopic and hernia repair. If a migration of a staple were to occur, such occurrence would take more than six months. It may take years. In this case, the migration of *two* staples occurred within six months after the initial surgery performed by Dr. Savoy.

I am aware that the number of experts is not crucial and a fact finder can accept or reject any expert opinion it chooses. However, it is difficult not to observe that Dr. Savoy's primary expert witness, Dr. Lee, is not a practicing physician. Rather, he is an instructor of resident surgeons and has performed only one

laparoscopic hernia repair during his entire career. Dr. Savoy had just been admitted to the practice of medicine for less than a year following the completion of his residency.

The defendant admits that the crucial question in this case is the manner in which the staples migrated to the spermatic cord. In other words, did Dr. Savoy staple them in that area during the hernia surgery he performed on Mr. Welch? The explanation offered for the pain which the plaintiff suffered immediately following the surgery and the injuries he sustained are all implausible and not supported by the defendant's evidence. The most reasonable and logical explanation was that the two staples were negligently misplaced around the spermatic cord during the surgery performed by Dr. Savoy. *See*, *e.g.*, *Fuselier v. Dauterive*, 00-151 (La. 7/14/00), 764 So.2d 74.