Judgment rendered November 19, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,629-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

| | |
|---|---|
| NICHOLAS JUDE GREGORY AND SARA HUMMEL GREGORY AND PROGRESSIVE BANK | Plaintiffs-Appellants |
| versus | |
| LANDOWNERS TITLE OF OUACHITA, L.L.C. AND CONTINENTAL CASUALTY COMPANY | Defendants-Appellees |

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2020-3410

Honorable Jefferson Bryan Joyce, Judge

* * * * *

| | |
|---|---|
| SHER GARNER CAHILL RICHTER KLEIN & HILBERT, L.L.C. By: James Michael Garner John Thomas Balhoff, II | Counsel for Plaintiffs-Appellants |

GIBSON LAW PARTNERS, LLC　　　　Counsel for
By: James Huey Gibson　　　　　　Defendants-Appellees;
　　Stacy Nicole Kennedy　　　　　Continental Casualty
　　　　　　　　　　　　　　　　　Company and
　　　　　　　　　　　　　　　　　Landowners Title of
　　　　　　　　　　　　　　　　　Ouachita, L.L.C.

TAYLOR, PORTER,　　　　　　　　Counsel for
BROOKS & PHILLIPS, LLP　　　　　Defendants-Appellees;
By: Michael Allen Crawford　　　　　Homeland Federal
　　　　　　　　　　　　　　　　　Savings Bank and
　　　　　　　　　　　　　　　　　Homeland Bancshares,
　　　　　　　　　　　　　　　　　Inc

ROUNDTREE LAW OFFICES　　　　Counsel for
By: James A. Roundtree　　　　　　Defendants-Appellees,
　　　　　　　　　　　　　　　　　Ronnie D. Ward and
　　　　　　　　　　　　　　　　　Shera Denise Albritton
　　　　　　　　　　　　　　　　　Ward

* * * * *

Before PITMAN, THOMPSON, and HUNTER, JJ.

**HUNTER, J.**

Plaintiffs, Nicholas Jude Gregory, Sara Hummel Gregory, and Progressive Bank, appeal a district court's ruling which denied their motion for summary judgment and granted summary judgment in favor of defendants, Landowners Title of Ouachita, L.L.C., and Continental Casualty Company. For the following reasons, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

On December 19, 2017, plaintiffs, Nicholas Jude Gregory and Sara Hummel Gregory ("the Gregorys"), purchased some property located in Monroe, Louisiana from Ronnie and Sharon Ward. A portion of purchase price of the property was secured by a mortgage granted to the Gregorys by Progressive Bank.

Defendant, Landowners Title of Ouachita, L.L.C. ("Landowners"), served as the closing title agent for the sale, and the title examination was conducted by Guy Campbell, III, a closing attorney employed by Landowners.[1] The title examination revealed the property was encumbered by a collateral mortgage in favor of Homeland Bancshares, Inc., d/b/a Homeland Federal Savings Bank ("the Homeland mortgage"). The pre-closing title commitment required Landowners to obtain the cancellation of the Homeland mortgage.

Prior to the closing date, Kathy Green, a Landowners employee, contacted Trena Parker, an employee of Homeland Bank, to determine the amount due on the Wards' loan and to arrange for the cancellation of the

_____

[1] According to the parties, Campbell is a member of the law firm which is the sole member of Landowners.

mortgage.[2]  According to Landowners, Ms. Parker verbally informed Ms. Greene that Homeland would release the mortgage without any payment and would issue a mortgage cancellation certificate.

On December 19, 2017, Landowners recorded the deed from the Wards to the Gregorys and the Gregorys' Progressive Bank mortgage into the mortgage records in Ouachita Parish.  On December 27, 2017, eight days after the Gregorys closed on the property, Ms. Greene emailed a mortgage cancellation certificate to Homeland.  However, Homeland did not return the signed mortgage cancellation certificate and did not cancel the mortgage.  Additionally, the Wards received the purchase price for the property but did not use the proceeds to pay off the amount due ($575,000) under the Homeland mortgage.

At the request of Progressive Bank, the Gregorys purchased title insurance through First American Title Insurance Company ("First American"), and a title policy was issued to the Gregorys in the amount of $575,000, and to Progressive Bank, as mortgagee, in the amount of $515,000.  The title policy did not show any encumbrances against the property, other than the mortgage in favor of Progressive Bank.

In 2019, the parties discovered the Homeland mortgage on the property was never cancelled.  Following an investigation, counsel for Landowners met with employees of Homeland Bank and requested a cancellation of the mortgage.  Homeland Bank refused to cancel the mortgage and denied ever agreeing to cancel the mortgage without

---

[2] In some portions of the record, Ms. Parker is referred to as "Trena," while in other portions, she is referred to as "Teena."

2

payment.[3] Landowners notified the Gregorys and facilitated the retention of a law firm to represent them in the matter. Landowners also notified First American regarding the potential claim by the Gregorys. Subsequently, Homeland Bank began sending communications to the Gregorys, threatening foreclosure.

On December 21, 2020, plaintiffs, the Gregorys and Progressive Bank, filed a lawsuit against defendants, Landowners and its insurer, Continental Casualty Company. Plaintiffs alleged as follows: (1) Landowners' failure to obtain the cancellation of the Homeland mortgage "causes or will cause damage" to plaintiffs; (2) Landowners "remains obligated to obtain the cancellation" of the Homeland mortgage "or to pay [plaintiffs] the sum required to obtain its cancellation"; and (3) Continental Casualty is liable, *in solido*, with Landowners for any losses sustained by plaintiffs.[4]

Meanwhile, the Gregorys' title insurer, First American, tendered the full limits of the policy, $575,000, to the Gregorys. In turn, the Gregorys

---

[3] By this time, Ms. Greene was no longer employed by Homeland Bank and had moved to another state.

[4] On March 8, 2021, Landowners filed an answer and third-party demand against Homeland Bank and the Wards, alleging it "relied on the verbal promise of Teena Parker, a Homeland employee would cancel the Ward/Homeland mortgage without requirement of payment." On October 19, 2021, plaintiffs filed a "First Supplemental and Amended Petition," to add Ronnie and Sharon Ward as additional defendants. Plaintiffs alleged the Wards failed to obtain cancellation of the Homeland mortgage. In response to the third-party demand, the Wards filed an exception of no cause of action, asserting Landowners did not alleged they (the Wards) owed a duty to it and did not allege "a breach of duty, contractual or delictual, by Ronnie or Sharon Ward." The Wards also filed an answer to plaintiffs' first supplemental and amended petition generally denying plaintiffs' claims, and alleging, "The fault lies entirely with the Gregorys' agent, whom they insisted close the transaction." The Wards also filed a reconventional demand, alleging if they are liable to plaintiffs, then they are entitled to a judgment against Landowners and Guy Campbell, III for any amount for which they may be held liable to plaintiffs.

The parties' claims against Homeland Bank and the Wards are not at issue in this appeal.

paid the amount of $575,000 to Homeland Bank to obtain the cancellation of the mortgage. On April 29, 2022, Homeland Bank filed a request to cancel the mortgage.[5]

On June 11, 2024, Landowners filed a motion for summary judgment arguing First American, the Gregorys' title insurance company, paid the Homeland mortgage in full, therefore, plaintiffs have been returned to their original position and have not suffered any loss. Landowners attached documents in support of its position, including plaintiffs' petition, an affidavit executed by Guy Campbell, III, the closing agent/attorney, mortgage records, the Act of Cash Sale by which the property was sold by the Wards to the Gregorys, the First American policy of title insurance, the April 2022 request for cancellation of the Homeland mortgage, and certain closing documents from the 2017 sale.

On September 17, 2024, the Gregorys filed a motion for summary judgment, arguing Landowners breached its duty to obtain cancellation of the mortgage, and its negligence resulted in them having to pay $575,000 to Homeland to remove the mortgage from the property. Therefore, according to the Gregorys, they were entitled to summary judgment "on their full claim against Landowners for $575,000." In argument, the Gregorys asserted, "Because [they] were faced with imminent threat of foreclosure on their Property, First American tendered the policy's full $575,000 limit to the Gregorys," and they used the funds to pay Homeland Bank to cancel the mortgage. The Gregorys also argued the collateral source rule prevented

---

[5] In October 2023, the Gregorys paid off the Progressive Bank mortgage in full. On May 28, 2024, plaintiff, Progressive Bank, filed a motion to dismiss, without prejudice, its claims against all parties named. The district court granted the motion and dismissed Progressive Bank's claims without prejudice. The matter proceeded with the Gregorys as plaintiffs.

Landowners, the tortfeasor, from benefitting from the title insurer's settlement of the mortgage.

Following a hearing, the district court denied the Gregorys' motion for summary judgment and granted summary judgment in favor of Landowners. In its reasons for judgment, the court stated:

> The Court acknowledges that Landowners failed to fulfill a duty owed to the Gregorys by neglecting to secure the cancellation of the mortgage on the property held by the Wards. However, the obligation of [$575,000] owed to Homeland was resolved through the title insurance held by the Gregorys, rather than through a direct payment by the Gregorys themselves. In a Duty Risk Analysis, the responsibility lies with the [plaintiff] to substantiate claims with proof of actual damages. Landowners point to the fact that because the Gregorys did not personally pay the mortgage, they have failed to establish any actual losses or damages. This Court concludes there is insufficient evidence to support the Gregorys' claims that they have been damaged and have experienced a severe change in position because of First American's settlement of the uncanceled mortgage.
> ***
> [R]egardless of the Gregorys' assertion that they are not fully compensated due to the actions of the Landowners, the Louisiana Supreme Court has consistently ruled that an injured party is not permitted to receive double recovery. In fact, Louisiana courts have long recognized that "windfalls" or "double dipping" are prohibited. In this case, the Gregorys have sought the [$575,000] that their title insurance company paid to Homeland to cancel the mortgage. Awarding the Gregorys an additional [$575,000] would contravene the prohibition against windfalls established by Louisiana courts.

(Internal footnotes omitted). The district court dismissed the Gregorys' claims against Landowners and its insurer, and each party was ordered to bear their own costs.

The Gregorys appeal.

## DISCUSSION

The Gregorys contend the district court erred in denying their motion for summary judgment and granting summary judgment in favor of Landowners. They argue Landowners breached its duty to obtain the

cancellation of the mortgage, and its negligence was a cause-in-fact and a legal cause of their damages. The Gregorys also claim they were forced to pay off the mortgage "to stave off foreclosure of their Property[.]" They also argue they "used their own title insurance proceeds to make that payment, and they also lost their title insurance policy they would otherwise have intact absent Landowners' negligence." The Gregorys maintain "if Landowners had properly canceled the Homeland mortgage at closing, [they] would have unencumbered property and a fully intact title insurance Policy with $575,000 of coverage."

A party may move for a summary judgment for all or part of the relief for which he has prayed. La. C.C.P. art. 966(A)(1). After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

The motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. La. C.C.P. art. 966 (A)(3). A genuine issue is one about which reasonable persons could disagree. *King v. Town of Clarks*, 21-01897 (La. 2/22/22), 345 So. 3d 422. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. *Id.* When the motion is made and supported as provided in Art. 966, an adverse party may not rest on the mere allegations or denials of his pleadings but must set forth specific facts showing there is a genuine issue for trial. La. C.C.P. art. 967 (B); *Latour v. Brock*, 23-00262 (La. 6/21/23), 362 So. 3d 405. Appellate courts review motions for

summary judgment de novo, using the same criteria that govern the trial court's determination of whether summary judgment is appropriate. *Farrell v. Circle K Stores Inc.*, 22-00849 (La. 3/17/23), 359 So. 3d 467; *Noland v. Lenard*, 55,342 (La. App. 2 Cir. 11/15/23), 374 So. 3d 1133, *writ denied*, 23-01670 (La. 2/14/24), 379 So. 3d 32.

La. C.C.P. art. 966(D)(1) allocates the burden of proof on summary judgment as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

To avoid dismissal, the plaintiff in a negligence action must introduce (for the purpose of summary judgment) prima facie evidence of the element or elements of that claim challenged by the motion for summary judgment. *McGee v. Ashford Place Apartments, LLC*, 54,795 (La. App. 2 Cir. 11/16/22), 351 So. 3d 899.

The collateral source rule is a rule of evidence and damages that is of common law origin, yet it is embraced and applied by Louisiana courts. *Bozeman v. State*, 03-1016 (La. 7/2/04), 879 So. 2d 692, 697. In both *Bozeman*, *supra*, and *La. Dept. of Transp. & Dev. v. Kansas City Southern Ry. Co.*, 02-2349 (La. 5/20/03), 846 So. 2d 734, 739, the Louisiana Supreme Court cited the Restatement (Second) of Torts § 920A (1979) as source material for the collateral source rule. Restatement (Second) of Torts § 920A provides:

(1) A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability.

(2) Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable.

Under the collateral source rule, a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution. *Bozeman, supra*. Hence, the payments received from the independent source are not deducted from the award the aggrieved party would otherwise receive from the wrongdoer, and a tortfeasor's liability to an injured plaintiff should be the same, regardless of whether or not the plaintiff had the foresight to obtain insurance. *Bozeman, supra*. As a result of the collateral source rule, the tortfeasor is not able to benefit from the victim's foresight in purchasing insurance and other benefits. *Thomassie v. Amedisys La Aquisitions, LLC*, 20-01229 (La. 1/20/21), 308 So. 3d 1165; *Bozeman, supra*.

The primary policy reason for the application of the collateral source rule is tort deterrence. The rule reflects the belief that the tortfeasor should not profit from the victim's prudence in obtaining insurance, and that by reducing the amount the tortfeasor would have to pay, the deterrent effect of the law would be hampered. *Cutsinger v. Redfern*, 08-2607 (La. 5/22/09), 12 So. 3d 945.

Subrogation is an exception to the collateral source rule. *Pelle v. Munos*, 19-0549 (La. App. 1 Cir. 2/19/20), 296 So. 3d 14; *Great West Cas.*

*Co. v. State ex rel. Dept. of Transp. & Dev.*, 06-1776 (La. App. 1 Cir.

3/28/07), 960 So. 2d 973, *writ denied*, 07-1227 (La. 9/14/07), 963 So. 2d

1005. Thus, the collateral source rule is inapplicable where the right of

subrogation is involved, even if the party subrogated does not appear to

assert its subrogation rights and the defendants do not timely object to the

nonjoinder of the necessary party. *Id.*

Subrogation is the substitution of one person or entity to the rights of

another. La. C.C. art. 1825. Subrogation is the legal fiction established by

law whereby an obligation, extinguished with regard to the original creditor

by payment which he has received from a third person, or from the original

debtor but with funds that a third person has provided, is regarded as

substituting in favor of this third person who in essence steps into the shoes

of the original debtor and is entitled to assert, in the measure of what he has

paid, the rights and actions of the former creditor. *A. Copeland Enterprises,*

*Inc. v. Slidell Mem. Hosp.*, 94-2011 (La. 6/30/95), 657 So. 2d 1292; *Safeway*

*Ins. Co. of La. v. State Farm Mut. Auto. Ins. Co.*, 36,853 (La. App. 2 Cir.

3/5/03), 839 So. 2d 1022.[6]

In the instant case, the following material facts are not in dispute: (1) The

Gregorys purchased the property from the Wards; (2) the property was

encumbered by a mortgage in favor of Homeland Bank; (3) the Wards

received the proceeds from the sale of the property but did not pay off the

---

[6] Subrogation may be either conventional or legal. La. C.C. art. 1825. It may result from either the agreement of the obligor or the obligee or both with a third person (*i.e.*, conventional subrogation), or directly from the operation of law (*i.e.*, legal subrogation). Thus, the intention of subrogation is to protect such persons who perform certain acts. *A. Copeland Enterprises, Inc.*, *supra*; *Safeway Ins. Co. of La.*, *supra*. When subrogated to the rights of the insured, the insurer stands in the shoes of the insured and thereby acquires the independent right to assert the actions and rights of the insured. La. C.C. arts. 1825 and 1826; *Barreca v. Cobb*, 95-1651 (La. 2/28/96), 668 So. 2d 1129; *Safeway Ins. Co. of La.*, *supra*.

Homeland mortgage; (4) Landowners acted as the closing title agent for the sale; (5) Landowners was required to ensure the cancellation of the Homeland mortgage; (6) Landowners did not obtain the cancellation of the mortgage; (7) the Gregorys' title insurer paid the limits of its policy, $575,000; and (8) the Gregorys used the $575,000 to pay off the Homeland mortgage.

Our de novo review of this record establishes genuine issues of material fact exist as to whether First American has a right of subrogation and whether any recovery by the Gregorys, pursuant to the collateral source rule, would result in a "windfall." Thus, summary judgment is not warranted at this time. Consequently, we conclude the district did not err in denying the Gregorys' motion for summary judgment, but it did err in granting summary judgment in favor of Landowners.

## CONCLUSION

For the foregoing reasons, we affirm the district court's judgment denying the motion for summary judgment filed by plaintiffs, Nicholas Jude Gregory and Sara Hummel Gregory, and we reverse the grant of summary judgment in favor of defendants, Landowners Title of Ouachita, L.L.C. and Continental Casualty Company. We remand for further proceedings. The costs of the appeal will be borne equally by the parties.

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**

10